IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00947-DDD-KLM

JAMES COREY GOODE, individually, and GOODE
ENTERPRISE SOLUTIONS INC.

                                                                                                                  Plaintiffs,

v.

ROGER RICHARDS RAMSAUR, LEON ISAAC KENNEDY
and ADRIENNE YOUNGBLOOD,

                                                                                                                 Defendants.

---

## PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS

---

**COME NOW,** Mr. James Corey Goode and Goode Enterprise Solutions, Inc. (collectively, "Plaintiffs") by and through their undersigned counsel, pursuant to the Federal Rules of Civil Procedure, Rules 26(c)(3), 37(a)(5), and 37(d), file their Motion to Compel and for Sanctions (the "Motion") against and to compel Defendants and their counsel to produce documents in their possession that are responsive to the subpoenas (*see* Docket 72) and Requests for Production ("RFPs") issued by Plaintiffs in this case. Plaintiffs also request this Court compel Defendant Richards to appear and cover costs for his deposition. Additionally, Plaintiffs seek sanctions against Defendants' counsel for misconduct during depositions taken in this case. Finally, Plaintiffs seek sanctions against all Defendants for the unauthorized release of portions of Mr. Goode's confidential deposition testimony across various media.

### I.   Relevant Background

This Action was commenced by Mr. Goode on April 3, 2020. (Docket 1). Written discovery has taken place amongst the Parties and depositions commenced with the deposition of Plaintiff Mr. James Corey Goode on September 26, 2022.

Through written discovery, Plaintiffs have requested bank records for an entity created by Defendant Kennedy bearing the same name as an entity created by Mr. Goode ("SBA Media") but have not received responsive substantive bank documents. (See Exhibit "A" pp. 6-7 Interrogatory No. 6). Defendants pointed to documents in their production that are portions of spreadsheets showing various expenses and payments—not actual bank records. Plaintiffs have requested these documents by subpoena that was served on Wells Fargo Bank, N.A. ("Wells Fargo") on July 12, 2022. Plaintiffs filed a Motion to Compel that was deemed moot by this Court on December 8, 2022. (Docket 87). Prior to that order, a representative for Wells Fargo contacted undersigned counsel for an extension to produce documents, which Plaintiffs granted. Wells Fargo has not yet produced responsive documents yet but counsel for Wells Fargo and Plaintiffs are in correspondence and working towards resolution of that matter. (*See* Exhibit B). However, the responsive documents to that subpoena are in the possession of Mr. Kennedy and as such Plaintiffs request this Court compel production of those documents by Mr. Kennedy and, to the extent applicable, other Defendants.

During Mr. Kennedy's deposition, Mr. Kennedy represented to undersigned counsel that he would provide the responsive documents regarding communications with a Mr. Jim Martin. These documents have been requested in Plaintiffs' Request for Production ("RFPs", *see* Exhibit "C") Those documents have not been produced. Plaintiffs respectfully request this Court compel production of those documents related to RFP No. 2.

Mr. Richards' deposition was set to take place on October 11, 2022. Merely days before his deposition, counsel for him reached out stating he had a surgery that "has been advanced" to the date of his deposition. (*See* Exhibit "D" p. 1). Since then, on January 12, 2023, this Court has ordered Mr. Richards to appear *pro se* in this matter and relieved his counsel from representation. (Docket 91). Yesterday, January 19, 2023, Mr. Richards reached out via email with a change of address. (Exhibit "E"). Plaintiffs request this Court compel Mr. Richards to provide dates for his deposition and cover the costs.

Finally, counsel for Defendants has engaged in litigation misconduct that has impeded and protracted the instant litigation. Specifically, Mr. Webb engaged in substantial speaking objections and instructions during the depositions of his clients, brought nonparties to the deposition of Mr. Goode although it was designated as confidential (*see* Exhibit D p. 3), made misrepresentations to counsel, and failed to cure mistakes in drafting of an extension request necessitated by his client's failure to show for his deposition (*see* Exhibit "F").

**II.     Arguments and Authorities**

  **a. Plaintiffs should be awarded sanctions against Defendants and their counsel for misconduct during depositions**

Fed.R.Civ.P. 30(c)(1) requires that ". . . [t]he examination and cross-examination of a deponent proceeds as they would at trial . . .." In addition, Fed.R.Civ.P. 30(d)(2) allows the Court to "impose an appropriate sanction-including the reasonable expenses and attorney's fees incurred by any party-on a person who impedes, delays, or frustrates the fair examination of the deponent." Generally, this rule is used when someone is accused of interrupting the deposition. *See*, *e.g.*, *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 4688836, at *8 (D.Kan. Oct. 6, 2011) (applying Fed.R.Civ.P. 30(d)(2) to counsel who violated Fed.R.Civ.P. 30(c)(2) by directing the deponent not to answer); *Deville v. Givaudan Fragrances Corp.*, 419Fed.Appx. 201, 209 (3d Cir.2011) (affirming

magistrate judge's imposition of sanctions pursuant to Fed.R.Civ.P. 30(d)(2) upon finding that attorney "testified on behalf of her witness by way of suggestive speaking objections"); *Craig v. St. Anthony's Medical Ctr.*, 384 Fed.Appx. 531, 533 (8th Cir.2010) (affirming district judge's award of sanctions pursuant to Fed.R.Civ.P. 30(d)(2) due to "a substantial number of argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without asserting a valid justification" pursuant to Fed.R.Civ.P. 30(c)(2)). Nothing in the rule limits its application to defense counsel's conduct. The imposition of sanctions under Rule 30(d)(2) requires the movant to identify language or behavior that impeded, delayed, or frustrated the fair examination of the deponent. *See* Fed.R.Civ.P. 30(d)(2). When making this inquiry, the court will look to: (1) the specific language used (e.g., use of offensive words or inappropriate tones); (2) the conduct of the parties (e.g., excessive objections or speaking objections); and (3) the length of the deposition. Second, the movant must identify "an appropriate sanction." *Id*. *Dunn v. Wal-Mart Stores, Inc.*, 2013 WL 5940099, at *5 (D.Nev. 2013).

If an attorney impedes, delays, or frustrates the fair examination of the deponent, Fed. R. Civ. P. 30(d)(2) allows a Court to impose an appropriate sanctions—including the reasonable expenses and attorney's fees incurred by any party. *See Carroll v. Allstate Fire & Cas. Ins. Co.,* 2014 U.S. Dist. LEXIS 28061 at *28-29 (citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 U.S. Dist. LEXIS 116174, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011) (applying Fed. R. Civ. P. 30(d)(2) to counsel who violated Fed. R. Civ. P. 30(c)(2) by directing the deponent not to answer); *Deville v. Givaudan Fragrances Corp.*, 419 Fed. App'x 201, 209 (3d Cir. 2011) (affirming magistrate judge's imposition of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) upon finding that attorney "testified on behalf of her witness by way of suggestive speaking objections"); *Craig v. St. Anthony's Medical Ctr.*, 384 Fed. App'x 531, 533 (8th Cir. 2010) (affirming district judge's award of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) due to "a substantial number of

argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without asserting a valid justification" pursuant to Fed. R. Civ. P. 30(c)(2)). "An 'appropriate sanction' leaves the court much discretion to determine the appropriate sanction under the facts presented. Courts generally use Rule 30(d)(2) when someone other than the deponent-like an attorney-interrupts the deposition." *Leininger v. U.S.*, No. 16-2627-DDC, 2020 WL 6395469, at *3 (D. Kan. Nov. 2, 2020), reconsideration denied, 2021 WL 75621 (D. Kan. Jan. 8, 2021) citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-2381-JWL-GLR, 2011 WL 4688836, at *8 (D. Kan. Oct. 6, 2011) (applying Rule 30(d)(2) to counsel who violated Rule 30(c)(2) by directing the deponent not to answer)). "The district court has discretion to 3 impose appropriate sanctions when a person 'impedes, delays, or frustrates the fair examination of the deponent,'." *Nebeker v. Nat'l Auto Plaza*, 643 Fed. App'x 817, 826 (10th Cir. 2016).

Here, counsel for Defendants made countless speaking objections, impeded the flow of the deposition by refusing to cooperate with counsel, videographers and court reporters, and engaged in argumentative discourse and actions.

Some of the speaking objections included the following, during Ms. Youngblood's deposition:

```
      21         Q    Okay.  And the second one?
      22         A    And I actually don't remember the year.
      23   I think it was 2000, and that was Mr. Lorenzo.  I'm not
      24   sure of that year, to be honest.
      25         Q    Okay.
     Page 17
       1               MR. WEBB:  Instruction, today estimates
       2   are fine.  So even if you don't remember the exact year,
       3   if you can give your best estimate, if you --
       4               MS. YANAROS:  Counsel, I can't understand
       5   what you -- is he clear to you guys?  I can't understand
       6   what you're saying.
       7               THE REPORTER:  I didn't get the first
       8   part of what you said.  It was garbled.  But then it
       9   became clear.
      10               MR. WEBB:  Okay.  So just giving
```

11  instruction to the client, that while you may not
12  remember exact dates, numbers, quantities --
13           MS. YANAROS:  No, Mr. Webb, this is
14  not -- you can instruct your client not to answer.  You
15  can't give any other -- this is my deposition.
16           MR. WEBB:  Sure.  Let's go off the record
17  so I can explain to her the difference between a guess
18  and an estimate, since you didn't give her that
19  instruction.
20           MS. YANAROS:  No, no.  We're not going
21  off the record.  I'm not agreeing to go off the record,
22  and that is not -- that's not a proper instruction under
23  the federal rules, Mr. Webb.  I know you don't regularly
24  practice under the federal rules, but if you want to get
25  them out and look at them again and review what is

 1  acceptable in a deposition, then maybe that's a good
 2  idea.  But as of right now, you can instruct her not to
 3  answer if you are asserting a privilege; otherwise, you
 4  can't -- you can't coach the witness.
 5           MR. WEBB:  Okay.  Can I finish, Counsel?
 6           MS. YANAROS:  Are you making an
 7  objection?
 8           MR. WEBB:  Only one of us can talk at --
 9           MS. YANAROS:  Are you making an
10  objection?
11           MR. WEBB:  We are either going to go off
12  the record and I'm going to give my client instruction
13  about guesses and estimates, or we'll do it on the
14  record.  What do you prefer.
15           MS. YANAROS:  Whatever you talk about off
16  the record you know we can talk about on the record,
17  correct?
18           MR. WEBB:  Okay.  Then I'll do it on the
19  record.
20           The difference, a guess and an estimate,
21  you won't remember everything perfectly.  Just do your
22  best today.  So even though you don't have an exact,
23  give counsel the best recollection you have.  So if it's
24  a year, a spring, a fall, an approximate number, just
25  give her the best you can, because that's what they want
Page 19
 1  today, okay?  So you're doing fine.
 2           MS. YANAROS:  Object to the side bar.
 3  Object to coaching the witness.
 4           I'm sorry.  Ms. Elliott, can you read

```
 5   back what the question was?
 6           THE REPORTER:  Sure.
 7           (Record read.)
 8       Q   (By Ms. Yanaros)  Yeah, what was
 9   Mr. Lorenzo's first name, Ms. Youngblood?
10       A   Michael.
11       Q   I'm sorry?
12       A   Michael.
13       Q   Michael.  Okay.  It's a little garbled.
14   All right.
```

Mr. Webb continued to make speaking objections throughout Ms. Youngblood's testimony, which was difficult to understand due to Mr. Webb's refusal to cooperate with the videographer.

Mr. Webb also instructed Ms. Youngblood not to answer in inappropriate circumstances:

```
 4        Q   And what made you move to California?
 5        A   (Inaudible) winters.
 6        Q   I'm sorry?
 7        A   The weather in Chicago.
 8        Q   Well, I couldn't understand what you had
 9   said before.  What did you -- what was it that you had
10   said before?
11        A   I said "Chicago winters."
12        Q   Oh, "Chicago winters," okay.  And when is
13   your birthday, Ms. Youngblood?
14            MR. WEBB:  We're not going to put her
15   birthday on a public record.
16            MS. YANAROS:  And this isn't a public
17   record, Counsel.  It's designated as confidential.  If
18   she had her driver's license there and she was in
19   Colorado, she would give us what her birthday is.
20            MR. WEBB:  I'm not going to put her
21   birthday on public record, nor her social.
22            MS. YANAROS:  Well, I didn't ask for her
23   social.  Counsel, what are you talking about?
24            MR. WEBB:  I'm not going to give you
25   either one of those, because those can go straight to

 1   bank records and --
 2            MS. YANAROS:  You're not going to give me
 3   anything.  Ms. Youngblood can state when her birthday
 4   is.  Are you instructing her not to answer when her
 5   birthday is?
 6            MR. WEBB:  Correct.  Yes.
```

```
           7            MS. YANAROS:  Which is publicly available
           8    information.
           9            Is that correct?
          10            MR. WEBB:  Really?  What's my birthday --
          11    if her birthday is public information --
          12            MS. YANAROS:  I'm not answering your
          13    questions, Counsel.  Are you instructing her not to
          14    answer?
          15            MR. WEBB:  If your birthday is publicly
          16    available, you can share it.  If it's not, don't.
          17    Because that's what can give access to your bank
          18    accounts and everything else.  So go ahead.
          19            MS. YANAROS:  Counsel, you can give the
          20    instruction and that's it.
          21            MR. WEBB:  And Counsel, just one of us at
          22    a time.  I understand you're objecting, but for the
          23    court reporter's sake, wait until I'm done before
          24    talking.
          25            MS. YANAROS:  Counsel --
       Page 31
           1       Q    Ms. Youngblood, are you going to answer
           2    or not?  It's -- it's an easy question.
           3       A    On the advice of my attorney, I'm going
           4    to not answer.
           5            MS. YANAROS:  All right.  Objection,
           6    nonresponsive.
           7       Q    Did you move to California with your
           8    family in 1984?
           9       A    Yes.
```

The inappropriate objections and instructions continued throughout Ms. Youngblood's seven-hour deposition:

```
           3       Q    Okay.  And is Oxnard, is that the same
           4    place where you're living right now?
           5       A    No.
           6       Q    Okay.  Do you still own that place in
           7    Oxnard?
           8       A    No.  I never owned it.
           9       Q    What made it home?
          10            MR. WEBB:  Objection.  No questions that
          11    go to financial discovery.  So that's not the purpose of
          12    this deposition.
          13            MS. YANAROS:  What?
          14            MR. WEBB:  Just -- it's -- just a
```

```
15   question for you to know.  We're not going into your
16   finances, bank accounts, what you own or don't own.
17   Improper.
18              MS. YANAROS:  Okay.  This is my
19   deposition, Mr. Webb, and we're going to talk about
20   whatever I want to talk about in my deposition.  If you
21   want to move for a protective order on something that's
22   relevant to the litigation -- when did I say anything
23   about finances?
24              MR. WEBB:  Counsel, when I'm talking,
25   please don't interrupt me for the sake of the court
Page 47
 1   reporter, once again, but I'm instructing my client not
 2   to answer as far as any sort of current financial
 3   conditions.  So you can proceed with your next question.
 4              MS. YANAROS:  Okay.  Well, that's -- that
 5   wasn't what we were talking about.
 6              MR. WEBB:  Good.  Great.
 7              MS. YANAROS:  And I would appreciate you
 8   stopping with the speaking objections, Counsel.  That's
 9   not appropriate.
```

Some of Mr. Webb's objections were devoid of any legal basis altogether:

```
 2         Q    (By Ms. Yanaros)  How often did you and
 3   your husband talk about the laws as they pertained to
 4   marijuana?
 5              MR. WEBB:  Objection.  Spousal marital
 6   privilege.  Instruction not to answer.
 7              Next question.
 8         Q    (By Ms. Yanaros)  Are you going to not
 9   answer, Ms. Youngblood?
10         A    On the advice of my attorney, I'm not
11   going to answer.
12              MS. YANAROS:  Objection, nonresponsive
```

Overall, close to two hours was wasted due to counsel's refusal to cooperate with counsel and the videographer or due to improper objections and instructions. Due to the severity of the offenses by counsel, Plaintiffs request reimbursement for costs and fees related to the preparation for and attendance to the deposition. Plaintiffs also request Ms. Youngblood and Mr. Kennedy be

compelled to answer all questions that they did not answer upon the misdirection of their counsel. Finally, Plaintiffs request any non-responsive testimony by Defendants be struck from the record.

### b. Defendant Richards should be sanctioned for failure to show to his deposition and provide a substantial justification

Federal Rule of Civil Procedure Rule 37(d) provides that the Court may, upon motion, order sanctions a party for failing to appear for her own deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Rule 37(d)(3) further provides that "[i]nstead of or in addition to [the aforementioned] sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*. (emphasis added). Courts in this District interpreting the Rule have found that it is mandatory in nature if the court finds that a party's failure was not substantially justified and that other circumstances do not make an award of expenses unjust. *See, e.g., Carbajal v. Warner*, No. 10-CV-02862-REB-KLM, 2014 WL 145305, at *3 (D. Colo. Jan. 14, 2014). *See also Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) **("[C]ourts and commentators alike have held that the provision requires the award of expenses unless the disobedient party meets that burden[.]") (quotations omitted). Cf. Doporto v. Chan Kim, No. CV 10-0145 JCH/WPL, 2012 WL 13076187, at *2 (D.N.M. Oct. 4, 2012) (observing that "Rule 37(d) is not an absolute rule, though, and the court may not issue sanctions when the individual's absence was "substantially justified or other circumstances make an award of expenses unjust.").** Because Defendants only request monetary sanctions, this court's analysis is limited to whether an award of expenses is justified in this instance. *Oldershaw v. DaVita Healthcare Partners, Inc.*, Civil Action No. 15-cv-01964-MSK-NYW, at *4-5 (D. Colo. July 6, 2018)

Similarly, Rule 26(c)(3) and Rule 37(a)(5) contemplate that a non-prevailing party and/or its counsel "must" pay the prevailing party's reasonable expenses incurred in making the motion, including attorney's fees. *Id*.

Here, Richards' deposition had been scheduled for months. Richards never provided any justification for his disappearance nor a doctor's note confirming his alleged surgery. This means his failure to appear for his deposition is not substantially justified. He should be compelled to appear and cover the costs for his deposition.

### c. Plaintiffs should be awarded sanctions against Defendants and their counsel for violation of the protective order in this case

A district court enjoys "broad discretion in using its contempt power to require adherence to court orders." *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir. 1992). A moving party must prove liability for civil contempt by "clear and convincing evidence." *Id*. at 1210. A violation need not be willful to result in a finding of civil contempt. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).

In *Ross v. Univ. of Tulsa*, 225 F. Supp. 3d 1254, 1264 (N.D. Okla. 2016), the District Court awarded compensatory sanctions for violation of a protective order when a party disclosed confidential materials to the press. The court stated:

> "Bryan agreed to the Protective Orders in order to obtain documents, and TU and non-parties produced documents in reliance upon these agreements. All parties filed certain discovery materials under seal throughout the litigation. Yet Bryan produced protected and/or sealed documents to the press without seeking Court permission. He adopted an unreasonably narrow interpretation of § 1(e), and he disregarded § 2(f) based on his decision that the parties and/or the Court erred in sealing a particular record. This "disclose now, ask for forgiveness later" approach justifies a finding of civil contempt and sanction."

*Id*.

Here, Defendants leaked Mr. Goode's deposition almost in its entirety, to the owners of various YouTube channels. This information was confirmed by counsel for Defendants while on a call with counsel for Plaintiffs. The leaked depositions—with highly derogative commentary—may be accessible at the following links:

Part 1: https://www.youtube.com/watch?v=ys6S1aK28nI

Part 2: https://www.youtube.com/watch?v=fp5jyiscomw

Part 3: https://www.youtube.com/watch?v=FO9grNOylLo

Part 4: https://www.youtube.com/watch?v=v9jp_GFMWSg

https://vimeo.com/780891626

No price can undo the damage done to Mr. Goode and his company due to the leak of these depositions. Investors names have been disclosed, private information of his family, friends and fans has been made public, and confidential projects have been revealed. Counsel for Defendants made the representation in Mr. Goode's deposition that "I mean it's a deposition. A deposition is a public proceedings (sic). This is not Mother Russia. So anyone can attend a deposition." Aside from being wholly incorrect, especially under the Protective Order in this case, "[c]ivil discovery is a device to allow parties to obtain information for the purpose of preparing and trying a lawsuit. Consequently, and contrary to the plaintiff's argument, a party has no right to make unrestricted disclosure of the information obtained through discovery," *Seattle Times Co. v. Rhinehart*, 467 U.S. at 32, 104 S.Ct. 2199. Plaintiffs request monetary sanctions in an amount deemed appropriate[1], and that Defendants should not be allowed to use the leaked parts of Mr. Goode's deposition for any purpose up to and through trial.

**III.    Conclusion and Prayer**

---

[1] In *SIMO Holdings v. Hong Kong uCloudlink Network Tech.* , 18-cv-5427 (JSR), at *2 (S.D.N.Y. Dec. 7, 2020), the Court awarded $40,000.00 in response to a similar, but smaller scale, infraction.

WHEREFORE, because Defendants and their counsel have repeatedly engaged in discovery abuse such as violating a protective order, misconduct during depositions, and refusal to comply with discovery requests, Plaintiffs respectfully request this Court compel Defendants' production of the abovementioned documents and information, monetary and other appropriate sanctions, and award fees and costs to Plaintiffs incurred in filing the Motion.

Date: January 20, 2023.                           Respectfully submitted,

                                                  /s Valerie A. Yanaros, Esq.

                                                  Valerie Yanaros, Esq.
                                                  Texas Bar No. 24075628
                                                  Admitted to Practice in the District
                                                  Court of Colorado
                                                  Yanaros Law, P.C.
                                                  8300 Douglas Avenue Suite 800
                                                  Dallas, Texas 75225
                                                  Telephone: (512) 826-7553
                                                  valerie@yanaroslaw.com

                                                  **ATTORNEY FOR PLAINTIFFS**


**CERTIFICATE OF CONFERRAL WITH D.C. Colo. LCivR 7.1**

Plaintiffs' counsel discussed the grounds for this motion and the relief requested herein with Defendants' counsel. Defendants oppose this Motion.

## CERTIFICATE OF SERVICE

      The below signed certifies that a copy of this document will be served via ECF on the following counsel for Defendants:

*/s Valerie A. Yanaros*
Valerie A. Yanaros

Lenden F. Webb (SBN 236377)
Christian B. Clark (SBN 330380)
**WEBB LAW GROUP, APC**
466 W. Fallbrook Ave., Suite 102
Fresno, CA 93711
Telephone: (559) 431-4888
Facsimile: (559) 821-4500
Email: LWebb@WebbLawGroup.com
Email CClark@WebbLawGroup.com

and Wells Fargo:


SNELL & WILMER, LLP
*By s/Andrea M. Hicks*
Andrea M. Hicks, #49781
1200 17th St., Ste. 1900
Denver, CO 80202
(303) 634-2000
ahicks@swlaw.com
Attorneys Wells Fargo Bank, N.A.