IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00947-DDD-KAS

JAMES COREY GOODE, individually, and
GOODE ENTERPRISE SOLUTIONS, INC.,

     Plaintiffs,

v.

ROGER RICHARDS RAMSAUR,[1]

     Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Plaintiffs' **Motion for Default Judgment Against Roger Richards/Ramsaur** [#130] (the "Motion"). The Motion [#130] has been referred to the undersigned for Recommendation. *See Order Referring Motion* [#131]. In the interest of resolving the Motion [#130] on the merits and ensuring that Defendant Roger Richards Ramsaur was served copies of all relevant orders, the Court directed the Clerk of Court to mail copies of nine documents to Defendant and ordered Defendant to respond to the Motion [#130] by January 9, 2024. *See Minute Order* [#137] at 2-3. The Court further ordered him to confirm his mailing address within seven days. *Id.* at 3. Defendant never filed a response to the Motion [#130] and never updated his mailing address. The Court has reviewed the operative Complaint [#32], the Motion [#130], the

_____

[1] The caption was updated after the dismissal of all claims between Plaintiffs/Counter-Defendants Goode and Goode Enterprise Solutions, Inc., and Defendants/Counter-Plaintiffs Kennedy and Youngblood. *See Order* [#150]. Because they are no longer parties, in this Recommendation, the Court refers to former defendant Leon Kennedy as Mr. Kennedy and former defendant Adrienne Youngblood as Ms. Youngblood.

pleadings and filings in this case, and for the following reasons, **RECOMMENDS** that Plaintiffs' Motion for Default Judgment [#130] be **DENIED WITHOUT PREJUDICE**.

## I. Background

The following allegations are taken from the Second Amended Complaint [#32] and are accepted as true for purposes of the Motion for Default Judgment [#130]. *See United States v. Craighead*, 176 F. App'x 922, 924-25 (10th Cir. 2006) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Plaintiff James Corey Goode ("Plaintiff Goode" or "Goode") is "an educational and motivational speaker, influencer, author and public figure" in the "Conscious Community." *Second Am. Compl.* [#32], ¶¶ 2, 12. Plaintiff Goode Enterprise Solutions, Inc., ("Plaintiff GES" or "GES") produces "educational, spiritual, health and entertainment goods and services geared toward the Conscious Community." *Id.*, ¶ 3. Plaintiff Goode is involved in the "Disclosure" movement, which is "geared towards bringing to light covert, clandestine and possibly harmful groups and ideas that control and contort mainstream media as well as bringing to the mainstream research evidence of interstellar travel and/or extraterrestrial existence." *Id.*, ¶¶ 19, 19 n.2. In June 2015, a television network, Gaia, approached Mr. Goode to star on a show called "Cosmic Disclosure." *Id.*, ¶ 20. While on the show, Mr. Goode "spoke about the testimony that he had been sharing and developing prior to his involvement with [Defendant, Mr. Kennedy, or Ms. Youngblood] regarding the Blue Avians™, 20 and Back™, and the SBA®." *Id.*, ¶ 21.

In 2016, Plaintiff Goode met Defendant Roger Richards Ramsaur ("Defendant," "Richards," or "Defendant Ramsaur"), at an event in Mount Shasta, California. *Id.*, ¶ 24. They became friends and Defendant began volunteering with Goode. *Id.* Defendant soon became Goode's "right-hand man." *Id.*, ¶ 25. Plaintiff GES owns federal trademarks for "Blue Avians," "20 and Back," "Sphere Being Alliance," and "SBA." *Id.*, ¶¶ 35, 36.

In 2018, Goode decided not to renew his contract with Gaia, and he hired a media team headed by Defendant to work on a graphic novel as well as two movies, "Above Majestic", and "Cosmic Secret." *Id.*, ¶¶ 28-29, 60, 61. Plaintiffs allege that in Plaintiff Goode's and Defendant's time working together, the two "entered into numerous written and verbal agreements together, wherein [Defendant] agreed to perform certain duties or work for [Plaintiff] Goode and Goode either paid [Defendant] in cash and/or ownership interest in various entities and/or projects." *Id.*, ¶ 48.[2] Defendant was paid "in cash and/or ownership interest in various entities and/or projects (e.g., an entity called 'SBA Media Enterprise, LLC' hereafter 'SBA Media') for his performance of certain duties or work." *Id.* Plaintiffs allege that Defendant, and later Mr. Kennedy, was entrusted to oversee and manage production and distribution of the graphic novel, which was set to be finished and distributed in 2018. *Id.*, ¶ 49. In early 2019, Defendant sent Goode an email stating:

> I will be stepping down and away from all things SBA related [sic] permanently from here on out. I gift with gratitude all my work on the SBA slate for Tracy, Above Majestic Sequels, the Graphic Novel, SBA events, and The SSP Book to you Corey [sic]. You are free to develop as you wish and reap the rewards as you wish, they are yours now.

---

[2] Although Plaintiffs broadly alleged the existence of contracts and breaches thereof, the District Judge found that "the [P]laintiffs' complaint does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform" and, therefore, the breach of contract claim was not well-pleaded. *See Order on Motion to Dismiss* [#117] at 6-7.

3

*Id.*, ¶ 39 (alterations in original). In an "open letter" posted on Facebook, Defendant stated, in part, that "[t]he idea of doing a Graphic Novel [sic] based on Coreys [sic] testimony was not my idea. I was asked to help organize the artist volunteers interested in participating." *Id.*, ¶ 46.

Setbacks associated with Defendant "using Graphic Novel funds to fund other projects of his own choosing" resulted in the postponement of the novel's release to 2019. *Id.*, ¶ 50. Goode met Mr. Kennedy around July 2018, and the latter also became involved with Plaintiffs' business dealings. *Id.*, ¶ 59 (alleging that Plaintiffs and Defendant "came to place their trust in [Mr.] Kennedy, handing over the reins of financial entities and any contract negotiations in reliance on his representations."). Mr. Kennedy became a point of contact between Goode and "The Orchard," a production company that entered a contract with Goode related to his movies, "Above Majestic" and "Cosmic Secret." *Id.*, ¶ 60.

While the graphic novel was in production, Plaintiff Goode was responsible for guiding the story, creating the characters, producing the drawings—all the "creative" aspects of the graphic novel. *Id.*, ¶ 67-68. "At one point, [Mr.] Kennedy and [Defendant] agreed to take over the finalization of the Graphic Novel and Above Majestic," which included the management of funds. *Id.*, ¶ 69. Defendant was responsible for the receipt of revenue from presales of the graphic novel, which "still remains to be finalized." *Id.*, ¶¶ 70, 71. Mr. Kennedy was involved in managing finances for the movie "Cosmic Street" and in distributing royalties for the movie "Above Majestic." *Id.*, ¶ 72. Mr. Kennedy allegedly used his connections with the Orchard to swindle hundreds of thousands of dollars from Plaintiff Goode and investors. *Id.*, ¶ 74.

Goode created the outline for "Cosmic Secret" based on his own intellectual property, Mr. Kennedy took the outline and gave it to Defendant, and Defendant "subsequently claimed that [he] directed Cosmic Secret when the agreement actually was that Goode and Richards were co-directors." *Id.*, ¶ 76. Defendant allegedly "misrepresented the contents of a contract for a movie deal he was negotiating on behalf of [Plaintiff] Goode and inserted himself—secretly—as IP owner." *Id.*, ¶ 77. Due to the fund mismanagement and Mr. Kennedy's and Defendant's abrupt departure, the graphic novel "has yet to be finished or distributed" and Plaintiff Goode must now fund the project on his own. *Id.*, ¶ 78. Plaintiff Goode alleges that he and his businesses have suffered reputational harm due to these issues with the graphic novel. *Id.*, ¶ 80.

Separately, Plaintiffs allege that Plaintiff Goode invested $15,000 in Ms. Youngblood's cannabis farm to support her planned project to start growing hemp. *Id.*, ¶¶ 85-86. Defendant's alleged role in this project was minimal. Specifically, Defendant and Youngblood allegedly "withheld any info about the status of the crops" and told Plaintiff and Mrs. Goode "that the whole hemp crop in which they invested died of a disease." *Id.*, ¶¶ 87, 90.

Plaintiffs allege that Mr. Kennedy and Defendant "commingled funds meant to be separated for Above Majestic, the Graphic Novel, and Cosmic Secret." *Id.*, ¶ 102. They allege that Mr. Kennedy and Defendant "engaged in shoddy management of sending the DVDs for Above Majestic and Cosmic Secret" and "[shoddy] management of various websites connected to any of the herein-described projects." *Id.*, ¶¶ 103-04. Plaintiffs also allege that Defendant, Mr. Kennedy, and Ms. Youngblood "have made claims against [Plaintiff Goode] that accuse him of crimes such as fraud and improperly disseminating

others' information." *Id.*, ¶ 107. Mr. Kennedy and Defendant allegedly have sent Goode, his associates, and his counsel threatening emails. *Id.*, ¶ 108. Allegedly, Mr. Kennedy and Defendant continue to use their protected trademarks despite not being in a business relationship and lacking authorization. *Id.*, ¶ 110. When Kennedy and Richards send DVDs to customers, they allegedly use "SBA®" in their email address and mailing address. *Id.*, ¶ 111. Plaintiffs allege that the shoddy quality of those "packages" has "tarnished and harmed Goode's goodwill and image." *Id.*, ¶ 112. They further allege that Defendant, Mr. Kennedy, and Ms. Youngblood owe Plaintiff Goode money that they refuse to pay back. *Id.*, ¶ 113.

Finally, Plaintiffs attached four Exhibits to the prior amended complaint, which they impermissibly incorporate by reference in the operative Complaint [#32]: their Registered Trademarks for "Sphere Being Alliance" and "SBA," *Registered Marks* [#7-1]; the Trademark Application for "Dimensions of Disclosure," *Trademark Application* [#7-2]; a photo of alleged "shoddy" DVD package *Photograph* [#7-3]; and a screenshot of alleged shoddy "management of various websites," *Screenshot* [#7-4]. Pursuant to D.C.COLO.LCivR 15.1(b), "[u]nless otherwise ordered, a proposed amended pleading "shall not incorporate by reference any part of the preceding, including exhibits[.]" When Plaintiffs sought leave to file the operative Complaint [#32], they did not identify any exhibits from their prior pleading which they sought to incorporate by reference. *See Consent Motion to File Second Amend. Compl.* [#29]. Further, the Order granting the Consent Motion did not grant Plaintiffs permission to incorporate by reference any previously filed exhibits. *See Order* [#30]. Accordingly, the Court declines to consider Plaintiffs' exhibits.

## II. Analysis

**A.      Jurisdiction**

**1.      Personal Jurisdiction**

The Court may not enter default judgment without personal jurisdiction over the defendant. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (citing *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008)). "[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992). Thus, "[d]efault judgments are void if entered by a district court without personal jurisdiction" and "district courts cannot obtain personal jurisdiction without proper service." *Doran Law Office v. Stonehouse Rentals, Inc.*, 678 F. App'x 733, 735 (10th Cir. 2017) (citing *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

On July 19, 2020, Plaintiffs filed a Waiver of Service [#17] on Defendant Ramsaur, who was represented by counsel at the time. The waiver was signed by counsel Christian B. Clark, on Defendant's behalf. *See Waiver of Service* [#17]. On October 2, 2020, Defendants filed a motion to dismiss Plaintiffs' breach of contract claim, which the Court granted. *Motion to Dismiss* [#34] at 12; *Order* [#117] at 1, 7 (granting motion). While the Motion to Dismiss [#34] was pending, on November 29, 2022, Defendant's counsel moved to withdraw from representation. *Motion to be Relieved as Counsel* [#84]. They asserted a breakdown of communication and provided Defendant's last known address and contact information. *Id.* at 1-2.

While "waiving service of a summons does not waive any objection to personal jurisdiction or venue," a party voluntarily submits to the Court's jurisdiction "by appearing before this Court and filing motions without raising the defense of insufficient service." Fed. R. Civ. P. 4(d)(5); *United States v. Heijnen*, 376 F. Supp. 2d 1193, 1194 (D.N.M. 2005). Here, Defendant's "attorney appeared on [his] behalf in filing the motion to dismiss," and "voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court." *Hopper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982)). Here, the Court finds that it has personal jurisdiction over Defendant because he voluntarily appeared through counsel. *Id.*; *see Motion to Dismiss* [#34].

### 2. Subject Matter Jurisdiction

The Court must also have subject matter jurisdiction before it may enter default judgment. *See Villanueva v. Account Discovery Sys., Inc.*, 77 F. Supp. 3d 1058, 1067 (D. Colo. 2015) (citing *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986)). Federal district courts have original jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. Here, Plaintiffs' claims include trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125. *Second Am. Compl.* [#32], ¶¶ 116-149. A claim under the Lanham Act falls within the Court's federal question subject matter jurisdiction. *See, e.g.*, *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) (holding that "the district court had

federal question jurisdiction over [a] declaratory judgment action" that was premised on section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1)).

As for Plaintiffs' state law claims, "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) (collecting cases). Here, Plaintiffs' federal and Colorado claims arise from common facts, i.e., the deterioration of the business relationship between Plaintiffs and Defendant. *See Second Am. Compl.* [#32], ¶¶ 61-114. The Court finds that these claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Court is satisfied that it has subject matter jurisdiction over all of Plaintiffs' claims.

**B.   Entry of Default**

The Court also considers whether default was properly entered against Defendant. *See, e.g.*, *Topp v. Lone Tree Athletic Club, Inc.*, No. 13-cv-01645-WYD-KLM, 2014 WL 3509201, at *4 (D. Colo. July 15, 2014). Fed. R. Civ. P. 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." When a defendant files a Rule 12 motion instead of an answer, the period to respond is altered to 14 days after the Court rules on the motion. *Strobel v. Rusch*, No. CIV 18-0656 RB/JFR, 2020 WL 3893071, at *2 (D.N.M. July 10, 2020) ("Though no

appellate case appears to address whether all responsive pleadings are tolled when only a partial motion to dismiss is filed, district courts are in clear alignment on the matter.") (collecting cases); *Kent v. Geren*, No. 07-cv-02202-ZLW-MJW, 2008 WL 150060, at *1 (D. Colo. Jan. 11, 2008) (holding that filing of a partial Rule 12 motion tolled the responsive pleading deadline until notice of the court's action on that motion). Default may be entered "if [a] defendant fails to appear after being properly served with [an] [a]mended [c]omplaint." *Williams v. Cutting Edge Hairstyling*, No. 10-2174-CM-DJW, 2010 WL 3908608, at *2 (D. Kan. Oct. 1, 2010).

Here, Plaintiffs were given leave file a Second Amended Complaint by September 29, 2020, and the Court set October 6, 2020, as Defendants' response deadline. *Order* [#30]; *Second Am. Compl.* [#32]. In lieu of filing an answer, on October 2, 2020, Defendants filed a Motion to Dismiss under Rule 12(b)(6), which sought to dismiss the breach of contract claim. *See generally Motion to Dismiss* [#34]. On September 30, 2023, the Court granted Defendants' Motion to Dismiss and dismissed Plaintiffs' breach of contract claim. *See Order Granting Motion to Dismiss* [#117]. Therefore, Defendant's deadline to file a responsive pleading was 14 days later, or October 14, 2023. While Ms. Youngblood and Mr. Kennedy timely filed an answer, Defendant Ramsaur did not. *See Defendants Youngblood and Kennedy Answer* [#119]. On November 7, 2023, Plaintiffs moved for entry of default and, on November 8, 2023, the Clerk of Court entered default. *See Motion for Entry of Default* [#126]; *Clerk's Entry of Default* [#127]. Defendant Ramsaur never responded to the Second Amended Complaint [#32], nor has he appeared in this matter since his counsel withdrew. Therefore, the Court finds that entry of default against Defendant was proper.

### C.  Default Judgment

A trial court has discretion to enter default judgment; a party is not entitled to it as of right. *Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1148-49 (D. Colo. 2014).

By his default, Defendant has admitted Plaintiff's well-pleaded allegations of fact. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006). However, "a party in default does not admit mere conclusions of law." *Bixler*, 596 F.3d at 762 (citation omitted). The plaintiff still must plead sufficient factual allegations to establish the defendant's liability, and "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co.*, 515 F.2d at 1206 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment); *see also Topp*, 2014 WL 3509201, at *5-*10 (adopting recommendation to deny motion for default judgment where the plaintiff failed to "provide the necessary factual details to support" his Fair Labor Standards Act claim). Where plaintiffs' claims are barred or subject to dismissal under Rule 12(b)(6), the district court may exercise its discretion to deny default judgment. *Bixler*, 596 F.3d at 762.

Under Rule 12(b)(6), "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard conclusory allegations. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144-45 (10th Cir. 2023).  Conclusory allegations are those "in which an inference is asserted without 'stating underlying facts' or including 'any factual enhancement.'" *Id.* at 1144 (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). The Court may not enter default judgment where a

complaint fails to satisfy the elements of the asserted claims or otherwise fails to state a cognizable claim, whether through well-pleaded allegations or supporting documents. *Day v. Career Bldg. Acad.*, No. 18-cv-00837-RM-KMT, 2021 WL 1723777, at *2 (D. Colo. Mar. 18, 2021).

Finally, the amount of damages must be ascertained before a court may enter default judgment. *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) (citing 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2692 (1983)). A court "may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment" it needs to determine the amount of damages or establish the truth of any allegation by evidence. Fed. R. Civ. P. 55(b)(2)(B)-(C).

Here, Plaintiffs' claims against Defendant are: federal trademark infringement under 15 U.S.C. § 1114, 1125(a); false designation of origin and federal unfair competition under 15 U.S.C. § 1125; trademark counterfeiting under 15 U.S.C. § 1114; common law trademark and trade name infringement under Colorado law; common law unfair competition under Colorado law; violations of the Colorado Consumer Protection Act; slander per se; libel per se; tortious interference with business expectancy; breach of fiduciary duty; and embezzlement and fraudulent procurement of company funds. *See Second Am. Compl.* [#32], ¶¶116-69; 177-198.[3] Because none of these claims is

---

[3] Plaintiffs' claims are inconsistently numbered in the operative complaint. *See, e.g., Second Am. Compl.* [#32] at ¶¶ 153-54 ("V. Claim IV: Colorado Common Law Unfair Competition"), ¶¶ 194-95 ("XII. Claim XV: Embezzlement and Fraudulent Procurement of Company Funds"). Accordingly, in this Recommendation, the Court refers to Plaintiffs' claims by the number in which they appear, rather than the "Claim #" description used by Plaintiffs. Thus, for example, "Embezzlement and Fraudulent Procurement of Company Funds" is "Claim Twelve," not "Claim XV." Moreover, Plaintiffs' Claim Seven, Breach of Contract, has been dismissed with prejudice. *Second Am. Compl.* [#32], ¶¶ 170-76; *Order on Motion to Dismiss* [#117] at 7-8. Additionally, Claim Thirteen,

plausibly pleaded as to Defendant, as discussed below, the Court **recommends** that the Motion [#130] be **denied without prejudice**.

### D.   Plaintiffs' Causes of Action

As an initial matter, the Court notes that the diffuse and lengthy Complaint [#32] lacks a timeline of the relevant events and contains vague and conclusory allegations. Therefore, several of Plaintiffs' allegations are not entitled to the assumption of truth. *See Matney*, 80 F.4th at 1144-45.

Plaintiffs' conclusory allegations include that: (1) Defendant and Mr. Kennedy exercised their authority over the finances to embezzle funds for their own use; (2) Defendant and Mr. Kennedy owed Plaintiffs a fiduciary duty and breached that duty; (3) Defendant, Mr. Kennedy, and Ms. Youngblood "engaged in defaming activities" against Plaintiff Goode and his associates; (5) Defendant and Mr. Kennedy sent Plaintiff "emails containing threats that amount to extortion"; (6) Defendant, Mr. Kennedy, and Ms. Youngblood "have gone behind [Plaintiff] Goode's back to various entities and individuals to defame and tarnish his name"; (7) Defendant, Mr. Kennedy, and Ms. Youngblood "wrongfully and illegally" used his trademarks; (8) Defendant, Mr. Kennedy, and Ms. Youngblood "have made false representations, false descriptions, and false designations of origin regarding Defendants and Defendants' goods or services in violation of 15 U.S.C. § 1125(a)"; (9) Defendant and Mr. Kennedy's acts "constitute trademark counterfeiting in violation of Section 32 of the Lanham Act"; (10) Defendant, Mr. Kennedy, and Ms. Youngblood have "engaged in deceptive trade practices"; and (11) that Defendant and Mr. Kennedy covertly took funds and placed them in their own accounts and accounts of

---

Declaratory Judgments of Ownership of DoD Trademarks, was asserted only against Ms. Youngblood. *Second Am. Compl.* [#32], ¶¶ 199-202.

others in violation of C.R.S. § 18-4-405. *Second Am. Compl.* [#32], ¶¶ 73, 81-82, 106, 108, 114, 124-25, 138, 162, 192-93, 197.

While Plaintiffs were not required to plead any specific facts, "there are certain details the Plaintiff[s] should know and could properly plead to satisfy the plausibility requirement." *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (finding inadequate pleading rendered claims implausible and affirming dismissal). For example, Plaintiffs should be able to identify at least some products, emails, and social media messages Defendant disseminated bearing Plaintiffs' trademarks and when those products and communications were sent. Plaintiffs should know when the business relationship with Defendant ended, and when Defendant's authorization to use their marks ended. Plaintiffs should know which of their marks Defendant continues to use, and on what products or services that use continues. Plaintiffs should know what allegedly defamatory statements Defendant made about them, when, and to whom, especially if they were publicly posted on social media. Plaintiffs should know what Defendant said in his threatening "email to [Plaintiff] Goode at the beginning of this year." *Second Am. Compl.* [#32], ¶ 180. Plaintiffs should know which "interested business investors" were actual or prospective business contacts. Plaintiffs should be able to describe how Defendant mishandled company funds, even if they do not know the exact details. Most importantly, Plaintiffs should be able to distinguish between Defendant's conduct and that of Mr. Kennedy or Ms. Youngblood. The Court does not necessarily require all the above facts, but more detail is needed to render Plaintiffs' claims plausible. *Khalik*, 671 F.3d at 1194; *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant

did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff beliefs the defendant violated.").

### 1.   Federal Trademark Infringement, 15 U.S.C. § 1114 (Claim One)

Plaintiffs assert that Defendant committed federal trademark infringement in violation of 15 U.S.C. §§ 1114. *Second Am. Compl.* [#32], ¶¶ 116-149. The Lanham Act protects both trademarks and service marks. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). A trademark is "any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. A service mark is similar except that it is used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *Id.* "Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor." *Id.*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, prohibits the unauthorized "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which use "is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1). To state an actionable trademark infringement claim, Plaintiffs must plausibly allege: (1) the marks are valid and protectable; (2) Defendant used the mark in

commerce without consent; and (3) Defendant's use is likely to cause confusion. *Atlas Biologicals, Inc. v. Kutrubes*, No. 15-cv-00355-CMA-KMT, 2019 WL 4594274, at *6 (D. Colo. Sept. 23, 2019.

### a.    Trademark Allegations

Plaintiffs rely on the same allegations in support of their Claim One (Federal Trademark Infringement), Claim Two (False Designation of Origin and Federal Unfair Competition), Claim Three (Trademark Counterfeiting), Claim Four (Colorado Common Law Trademark and Trade Name Infringement), and Claim Five (Colorado Common Law Unfair Competition), *see, e.g., Second Am. Compl.* [#32], ¶¶ 151, 155 (both claims "premised upon the same facts and circumstances laid out in claims I-III"). The Court discusses them in detail here.

Plaintiffs allege that:

- Mr. "Kennedy and [Defendant] continue to use Goode's protected 'SBA®' and 'Sphere Being Alliance ®' trademarks and pending 'Blue Avians$^{TM}$' and '20 and Back$^{TM}$' trademarks although they are no longer in a business relationship [with] Goode and therefor [sic] are not authorized to do so."

*Second Am. Compl.* [#32], ¶ 110.

- Defendant and "[Mr.] Kennedy wrongfully and illegally made use of GES Marks by wrongfully and illegally continuing to use GES marks even though they are no longer affiliated with [Plaintiffs] Goode or GES. These activities were carried out without [Plaintiffs'] consent or knowledge up until the recent discovery of such activities."

*Id.*, ¶ 124.

- Defendant and Mr. Kennedy "send existing and prospective Goode customers numerous emails and social media messages and marketing which represented that their products or services were offered under GES Marks when in fact they are not."

*Id.*, ¶ 128.

16

- "[W]hen [Mr.] Kennedy and [Defendant] send out DVDs to customers and followers of Goode that have purchased his 'Above Majestic' movie[,] they do so by using 'SBA®' in their email address and mailing address."

*Id.*, ¶ 111.

- Defendant and Mr. Kennedy "have engaged in shoddy management of sending the DVD's" for Plaintiff Goode's movies, *Above Majestic* and *Cosmic Secret* and have poorly managed of various websites.

*Id.*, ¶ 104.

### b.   Plausibility

The Court focuses on the second element of Plaintiff's trademark infringement claim: unauthorized use of the mark. Because Plaintiffs' claim fails on that element, the Court declines to address the other two elements: the marks' validity and protectability (first element) and likelihood of consumer confusion (third element).

Plaintiffs fail to plead the most basic details of allegedly unauthorized use of their marks. Nearly all allegations are collectively aimed at "[Mr.] Kennedy and [Defendant] Richards." Though the Amended Complaint [#32] renders unclear the nature and duration of Plaintiffs' and Defendant's former business agreement, at one time, Defendant allegedly held an *ownership interest* in Goode's media company, SBA Media, and related projects; was empowered to negotiate deals on Goode's behalf; and agreed to manage funding for Plaintiffs' projects. *See Second Am. Compl.* [#32], ¶¶ 48, 69, 77. Further, Defendant allegedly received "royalties" and "ownership interests" from his work with Goode and SBA Media. *Id.*, ¶ 81. Though the Complaint articulates that Defendant, Mr. Kennedy, and Plaintiffs are "no longer in a business relationship," *see id.*, ¶ 110, the Complaint renders unclear whether, upon the business relationship's dissolution, Defendant relinquished all ownership interests he acquired.

Additionally, Plaintiffs' trademark infringement claim rests on threadbare allegations regarding unauthorized trademark use. Allegedly, Defendant and Mr. Kennedy have sent DVDs to "customers and followers of Goode" while "using 'SBA®' in their email address and mailing address." *Id.*, ¶¶ 110-11. Yet Plaintiffs' own allegations establish that Defendant *acquired an ownership interest* in Goode's media company, SBA Media. *Id.*, ¶ 48 (Plaintiffs "paid [Defendant] in cash and/or ownership interest in various entities and/or projects," including SBA Media), ¶ 81 ("[Defendant] and [Mr.] Kennedy agreed [to manage and control certain projects, manage finances, and maintain confidential information] in exchange for . . . pay, royalties and/or ownership interests"). Thus, Plaintiffs' allegations encompass a wide swath of conduct, including conduct commensurate with any ownership interests Defendant may have retained post-dissolution.

Plaintiffs' trademark infringement claim is also implausible to the extent it rests on Defendant's continued use of Plaintiffs' mark(s) after termination of a contract that conveyed a trademark license. As the District Judge noted in his Order dismissing Plaintiffs' breach of contract claim, the Complaint "does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform. And in the absence of such factual averments, [the Complaint] fails to nudge [the] breach-of-contract claim across the line from conceivable to plausible." *Order Granting Motion to Dismiss Breach-of-Contract Claim* [#117] at 6 (internal citations and quotation marks omitted). Put differently, Plaintiffs have not plausibly alleged "a proper termination of the instrument which grants [Defendant] the right to use of a mark." *Steak n Shake Enters., Inc., v. Globex Co.,* LLC,

No. 13-cv-01751-RM-CBS, 2013 WL 4718757, at *8 (D. Colo. Sept. 3, 2013) (preliminarily enjoining use of trademarks and tradenames upon a showing of a properly terminated franchise agreement, among other findings). In sum, Plaintiffs' claim falls to the extent it sits on the phantom foundation of an implausible breach of contract claim.

Based on the foregoing, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim One (Federal Trademark Infringement under 15 U.S.C. §§ 1114 and 1125(a)).

### 2.    False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125 (Claim Two)

Section 43 of the Lanham Act, or the federal unfair competition law, provides for two distinct causes of action for unfair competition: (1) false designation of origin; and (2) false description or representation, known as false advertising. *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 n.3 (10th Cir. 1999); *see also* 15 U.S.C. § 1125.

Specifically, § 43(a) of the Lanham Act, prohibits the unauthorized use

in commerce any word, term, name, symbol, or device, or . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of . . . [the] goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(A).

Section 43(a)'s protection extends to unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("Section 43(a) prohibits a broader range of practices than does § 32, which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks[.]") (internal citation and quotation marks omitted).

Here, Plaintiffs' unfair competition claim is premised on false designations of origin *and* false descriptions. *See Second Am. Compl.* [#32], ¶ 138 (broadly alleging, "Defendants' have made false representations, false descriptions and false designations of origin regarding Defendants and Defendants' goods or services in violation of 15 U.S.C. § 1125(a)").

A false designation of origin claim may take one of two forms: "'passing off,' where a party represents his or her *own* goods or services as someone else's or 'reverse passing off,' where a party misrepresents *someone else's* goods or services as his or her own." *John Bean Techs. Corp. v. B GSE Group, LLC*, 480 F. Supp. 3d 1274, 1303-04 (D. Utah 2020) (emphases in original). Plaintiffs do not explicitly state which form of false designation of origin they are alleging. They claim that "Defendants" have "made repeated representations about the source, origin, and nature of Defendants' products that have created the false and misleading impression that Defendants' goods or services are" created or authorized by Plaintiffs. *Second Am. Compl.* [#32], ¶ 137; *see also id.*, ¶ 138.

To state an actionable false description or false designation claim under § 43(a) of the Lanham Act, Plaintiffs must plausibly allege: (1) that their mark(s) qualify for protection; (2) Defendant used a false designation of origin or false description or representation in connection with goods or services; (3) the goods or services entered interstate commerce; (4) Plaintiffs were damaged by the use of such false description; and (5) the false description or representation was likely to cause confusion. *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 442 F. Supp. 2d 1160, 1168 (D. Kan. 2006).

Plaintiffs rely on the same allegations discussed by the Court in connection with their conclusory federal trademark infringement claim. To the extent that Plaintiffs' claim

20

rests on Defendant's and Mr. Kennedy's use of the mark "SBA" in their email and mailing addresses when fulfilling customer orders, *see, e.g.*, [#32], ¶ 111, Plaintiffs have not adequately alleged how Defendant's actions falsely designate origin, falsely or misleadingly describe or represent facts in a way that would confuse consumers about designation of origin or association as proscribed by 15 U.S.C. § 1125(a)(1)—especially when Defendant had received an ownership interest.

Finally, the failure to plausibly allege that Defendant made unauthorized use of Plaintiffs' marks is fatal to this claim: "The Lanham Act proscribes advertisements which mislead the public into believing that the trademark owner has sponsored, endorsed or authorized the use of the mark or that the owner is otherwise connected or affiliated with the infringer's product." *Paramount Pictures Corp. v Video Broad. Sys., Inc.*, 724 F. Supp. 808, 814 (D. Kan. 1989) (citations omitted). Where the trademark owner has authorized the use of his mark and where he is connected or affiliated with the product, the public is not misled by the mark's use.

Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Two (False Designation of Origin and Federal Unfair Competition under 15 U.S.C. § 1125).

### 3.    Trademark Counterfeiting, 15 U.S.C. § 1114 (Claim Three)

To state an actionable trademark counterfeiting claim under the Lanham Act, Plaintiffs must plausibly allege that (1) Defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) Defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. *Oakley, Inc. v. Ly*, No. 20-cv-1414-WJM-MEH, 2021 WL 3206320, at *2 (D. Colo. July 29, 2021) (citing

*Otter Prods., LLC v. Fisch Enter., Inc.*, No. 19-cv-00030-CMA-KLM, 2019 WL 7290937, at *4 (D. Colo. Oct. 3, 2019)). A "counterfeit mark" is defined as "(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available[.]" 15 U.S.C. § 1116(d)(1)(B).

Because the first element of trademark counterfeiting requires that "the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114," Plaintiffs' failure to plausibly plead infringement means that they have also failed to plausibly plead trademark counterfeiting. For reasons previously discussed, even accepting all well-pleaded facts as true, the Court cannot infer that Defendant's use of the marks, including the SBA mark in his email, was unauthorized or infringing. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Three (Trademark Counterfeiting – 15 U.S.C. § 1114).

### 4.    Colorado Common Law Trademark and Trade Name Infringement

Plaintiffs allege that Defendant has engaged in common law trademark and trade name infringement under Colorado law, "premised upon the same facts and circumstances laid out in Claims [One]-[Three]." *Second Am. Compl.* [#32], ¶ 151.

"The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004). Thus, Plaintiffs must

adequately allege (1) a protectable interest in their mark(s); (2) Defendant's use of that mark in commerce; and (3) the likelihood of consumer confusion. *Id*.

In Colorado, a claim of unfair competition regarding a similar trade name requires a plaintiff to adequately allege "(1) its name has acquired a secondary meaning and (2) the defendant has unfairly used the name, or a simulation of it, against the plaintiff." *Your True Nature, Inc.*, *v. JF Show Store*, No. 23-cv-00107-CNS-NRN, 2023 WL 2359234, at *2 (D. Colo. Feb. 14, 2023) (citing *Gregg Homes, Inc. v. Gregg & Co. Builders*, 978 P.2d 146, 147 (Colo. App. 1998)). "Secondary meaning" is "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1124 (D. Colo. 2011) (citation omitted). "[T]he use of the same or a similar name can constitute unfair competition 'if the public is likely to be deceived by its use.'" *Your True Nature, Inc.*, 2023 WL 2359234, at *2 (quoting *Gregg Homes, Inc.*, 978 P.2d at 147).

Here, Plaintiffs premise Claim Four on the same allegations underlying their first three claims. *Second Am. Compl.* [#32], ¶ 151. With respect to the common law trademark infringement claim, the Court finds—for the same reasons as with Claims One, Two, and Three above—that Plaintiffs have failed to plausibly allege Defendant's unauthorized or unfair use of their marks and, therefore, they have failed to plausibly allege that Defendant's use caused consumer confusion, i.e., the third element of this claim. As for trade name infringement, Plaintiffs simply point to Defendant's use of the SBA mark in email addresses or mailing addresses, which the Court cannot infer was an unauthorized use, given Plaintiffs' allegation that Defendant has (or had) an ownership interest in SBA

Media. *Second Am. Compl.* [#32], ¶ 111. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Four (Colorado Common Law Trademark and Trade Name Infringement).

### 5. Colorado Common Law Unfair Competition (Claim Five)

Plaintiffs' Colorado common law unfair competition claim is "premised upon the same facts and circumstances laid out in Claims [One]-[Three]." *Second Am. Compl.* [#32], ¶ 155. They broadly allege that

> Defendants have made unauthorized and infringing use of [Plaintiff] Goode's trademarks and trade names, wrongfully and illegally took control of Goode's content causing Goode's information and favorable social media content to be associated with Defendants', clearly intending to benefit from the reputation and goodwill residing in Goode's, utilized Defendants' position as advisor and/or colleague to gain access to Goode's existing and prospective customers with the intent of and undertaking actions and deceptive communications to create confusion and misperception and thereby diverting their business to Defendants.

*Id.*, ¶ 156. Plaintiffs point to no supporting factual allegations.

Because Plaintiffs rely on the same allegations underlying their federal trademark claims—which were conclusory, deficient, and implausible—the Court cannot infer that Defendant used Plaintiffs' marks without authorization or that he passed off goods (such as DVDs) as his own. Plaintiffs have not plausibly alleged that Defendant has used their names against them—at most, they have alleged that Defendant has used the SBA mark in an email address or mailing address. *Second Am. Compl.* [#32], ¶ 104. Similarly, the Court does not find that Plaintiffs have plausibly alleged that any customers or followers are likely to be confused or deceived. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Plaintiffs' Claim Five (Colorado Common Law Unfair Competition).

6.    **Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 (Claim Six)**

To pursue a private cause of action under the Colorado Consumer Protection Act (the "CCPA"), Colo. Rev. Stat. § 6-1-101 et seq., Plaintiffs must show (1) that Defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of Defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of Defendant's goods, services, or property; (4) that Plaintiffs suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused Plaintiffs' injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

"Where the alleged deceptive trade practice sounds in fraud, allegations as to fraudulent statements must be pled with particularity, as required by Fed. R. Civ. P. 9(b)." *See, e.g.*, *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216-17 (D. Colo. 2012) (applying Rule 9(b) specificity requirements to the plaintiffs' CCPA claims of deception regarding grocery store prices); *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532-PAB-STV, 2022 WL 392501, at *10 (D. Colo. Feb. 9, 2022) (applying same regarding CCPA claims arising from false representation as to "the source, sponsorship, or approval of [the] defendants' products and defendants' affiliation with [the] plaintiff"). This means that the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Hauschild GMBH*, 2022 WL 392501, at *10 (quoting *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011)).

Here, Plaintiffs' CCPA claim is not pleaded with specificity. As to Defendant, Plaintiffs rely on the allegation of "[Defendant] and [Mr.] Kennedy's misuse of the [Plaintiffs'] GES marks in connection with entertainment services and products such as DVDs." *Second Am. Compl.* [#32], ¶ 162. Elsewhere, Plaintiffs allege that Defendant and Mr. Kennedy illegally used the GES marks by "continuing to use GES marks even though they are no longer affiliated with [Plaintiffs] Goode or GES," and they "send existing and prospective Goode customers numerous emails and social media messages and marketing which represented that their products or services were offered under GES Marks when in fact they are not." *Id.*, ¶¶ 124, 128. Plaintiffs further allege that "[Defendant] and [Mr.] Kennedy are both in the entertainment market and have used the GES Marks to sell movies and/or graphic novels[.]" *Id.*, ¶ 136.

None of the Complaint's allegations provide the required "time, place and contents of the false representation" which underlies the alleged unfair or deceptive trade practice. *Haushchild GMBH*, 2022 WL 392501, at *10; *HealthONE*, 805 F. Supp. 2d at 1121. The Complaint renders unclear what "misuse of the GES marks" Defendant allegedly engaged in, and Plaintiffs therefore also fail to plausibly allege that this misuse had a significant public impact. *Hauschild GMBH*, 2022 WL 392501, at *10 ("All elements of a CCPA claim must be pled; otherwise, the claim fails as a matter of law.") (citing *HealthONE*, 805 F. Supp. 2d at 1120). Also, because Defendant and Mr. Kennedy are linked together in the relevant allegations, the Complaint is unclear as to what acts (if any) are attributable to Defendant and what acts (if any) are attributable to Mr. Kennedy. *Second Am. Compl.* [#32], ¶¶ 124, 128, 136, 162.

Finally, Plaintiffs' allegations concerning damages related to the alleged CCPA violation are also inadequate. While Plaintiffs allege that "[s]pecifically, [Plaintiff] Goode has lost hundreds of thousands of dollars through lost revenue from DoD [Dimensions of Disclosure] and the Graphic Novel" and has lost "tens of thousands of dollars in lost revenue and out of pocket costs" due to Defendant's and Kennedy's use of "the GES Marks to sell movies and/or graphic novels," *id.*, ¶¶ 136, 168, the allegations related to DoD do not even mention this Defendant. *Id.*, ¶ 162 (alleging that the "deceptive trade practices in the course of business in violation of [the CCPA] . . . was accomplished through [Ms.] Youngblood's misattribution of the DOD mark in connection with conferences"). Moreover, to the extent that the lost revenue stems from delays in the Graphic Novel's publication, those delays were *unrelated* to any alleged "misuse of the GES marks in connection with entertainment services and products such as DVDs." *Second Am. Compl.* [#32], ¶¶ 50 (alleging delays related to funding issues), 162, 168. By linking their alleged damages to conduct other than the allegedly deceptive trade practices, Plaintiffs have failed to plausibly plead actual damages caused by alleged deceptive trade practices. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Six (Colorado Consumer Protection Act).

### 7.     Slander Per Se and Libel Per Se (Claims Eight and Nine)

Plaintiffs allege that Defendant has engaged in both slander per se (Claim Eight) and libel per se (Claim Nine). *Second Am. Compl.* [#32], ¶¶ 177-86. Libel (usually written communication) and slander (usually oral communication) are the two types of communication which comprise the tort of defamation. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.5 (Colo. 1994). Where the plaintiff is a public figure, he must also show that

the allegedly defamatory statements were made with actual malice—that is, knowledge of their falsity or with reckless disregard of whether it was false or not. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14-15 (1990) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967)). Here, Plaintiffs allege that Plaintiff Goode is a "public figure" in the Conscious Community and that he has starred in a "hit show" for a "roaring three-year stint." *Second Am. Compl.* [#32], ¶¶ 12, 20.

Under Colorado law, libel and slander per se involving a public figure require a showing of the following elements: (1) publication of a statement the court has determined is defamatory; (2) actual damage; (3) material falsity, i.e. that the "substance or gist" of the statement was false when it was published; and (4) knowledge of falsity or reckless disregard as to falsity. *See* Colo. Jury Instructions ("CJI") – Civil 22:1; *Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 898-99 n.8 (Colo. 2002) (citing the CJI to discuss the elements of libel per se, libel per quod, and false light invasion of privacy). Statements are defamatory per se when they impute one of the following about the plaintiff: "(1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (citations omitted).

Here, Plaintiffs base their claims on purported statements by Defendant (and Ms. Youngblood and Mr. Kennedy) accusing Plaintiff Goode of fraud and improper business activities. *Second Am. Compl.* [#32], ¶¶ 51, 107, 178, 183. However, Plaintiffs do not identify any specific defamatory statements Defendant allegedly made. They claim that "all three Defendants have made claims against [Plaintiff] Goode that accuse him of crimes such as fraud and improperly disseminating others' information. All three

Defendants have made these claims in person to acquaintances of [Plaintiff Goode] and Mrs. Goode as well as through [s]ocial [m]edia postings and public forums." *Id.*, ¶ 107; *see also id.*, ¶ 51 (accusing Defendant of "ma[king] claims to various individuals accusing [Plaintiff] Goode of fraudulent business practices both in person and through various social media platforms"), ¶¶ 178, 183 (similar). None of these allegations provide enough detail to state a claim of slander or libel per se against Defendant. For example, Plaintiffs neither identify the statements nor indicate when those statements were made, which statements (if any) Defendant made, in which social media postings or forums, or to which acquaintances these statements were allegedly made. Plaintiffs should know at least some of the relevant details—for example, Plaintiffs allege that Defendant "threatened to [publish or communicate defamatory statements] prior to making such statement in an email to [Plaintiff] Goode at the beginning of this year," but they did not quote or even describe that email in their Second Amended Complaint [#32]. *Second Am. Compl.* [#32], ¶¶ 179, 180, 184, 185; *cf. Khalik*, 671 F.3d at 1194 (stating that, while the court "do[es] not mandate the pleading of any specific facts in particular, there are certain details the [p]laintiff should know and could properly plead to satisfy the plausibility requirement.").

Moreover, Plaintiffs' threadbare allegations render the Court unable to determine whether the at-issue (and unidentified) statements are plausibly defamatory. *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016) (noting that whether a statement is defamatory per se is a question of law for the court to decide). The Court need not accept as true Plaintiffs' unsupported inference that unidentified "defamatory" statements are actionable—these are "naked assertions devoid of further factual enhancement." *Johnston*, 715 F. App'x at 830; *Khalik*, 671 F.3d at 1194. Accordingly, the Court

**recommends** that the Motion [#130] be **denied without prejudice** as to Claim Eight (Slander Per Se) and Claim Nine (Libel Per Se).

### 8.   Tortious Interference with Business Expectancy (Claim Ten)

Colorado recognizes the tort of intentional interference with prospective business relations. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (discussing RESTATEMENT (SECOND) OF TORTS §§ 766B (1979)).

A person may tortiously interfere with a business expectancy when he "intentionally and improperly interferes with another's prospective contractual relation," whether by "inducing or otherwise causing a third person not to enter into or continue the prospective relation" or "preventing the other from acquiring or continuing the prospective relation." RESTATEMENT (SECOND) OF TORTS §§ 766B (1979); *see also Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 915 (D. Colo. 2021) (discussing Restatement factors).

The following factors weigh into whether intentional interference was improper: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. RESTATEMENT (SECOND) OF TORTS § 767 (1979).

However, even if the Court finds a party used improper means, it must determine whether sufficient evidence exists to establish an inference of injury—i.e., "whether the tortfeasor's wrongful conduct prevented the plaintiff from forming a contract." *Examination*

*Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 916. To qualify as a protected relationship, a "reasonable likelihood or probability" must exist "that a contract would have resulted; there must be something beyond a mere hope." *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)) (internal quotation marks omitted). Speculative prospective contracts do not suffice. *See Klein*, 44 F.3d at 1506 (noting absence of an "ongoing relationship with any of the investors," a single meeting with investors, and absence of investor intent to enter contractual relationship).

Here, the Court finds that Plaintiffs have not alleged any non-speculative business expectancy sufficient to demonstrate an inference of injury. Plaintiffs allege that "Goode had a multitude of actual or prospective business contracts with conferences and various entertainment agencies. Specifically, with DoD and other interested business investors," and "Defendants knew of these actual or prospective business contracts and intentionally and improperly interfered with the performance of these contracts[.]" *Second Am. Compl.* [#32], ¶¶ 188-89. These vague statements are asserted against Defendant, Ms. Youngblood, and Mr. Kennedy, collectively; no allegation is asserted against Defendant, particularly. *See id.*; *Robbins*, 519 F.3d at 1253 (noting the plaintiff's failure to put the defendants on notice as to the particular alleged actions that support liability).

Additionally, Plaintiffs identify *only one* business prospect, DoD, but nearly every allegation pertaining to DoD, except one, is directed at Ms. Youngblood and not against Defendant. *See generally id.*, ¶¶ 84-101 (section entitled "Dimensions of Disclosure [DoD] and Adrienne Youngblood"); *but see* ¶ 90 ("[Defendant] and [Ms.] Youngblood told the Goodes at DoD that the whole hemp crop in which they invested died of disease."). The

single allegation against Defendant falls far short of plausibly alleging Defendant's interference with a prospective business opportunity related to DoD.

No allegations in the Second Amended Complaint [#32] support the conclusion that a "reasonable probability" existed that Plaintiffs "would have received economic benefits" from a third party in the absence of this Defendant's actions. *See Klein*, 44 F.3d at 1506. Plaintiffs' "mere hope" of prospectively forming business contracts with unidentified third parties is insufficient to state a tortious interference claim. *Examination Bd. of Pro. Home Inspectors*, 519 F. Supp. 3d at 917. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Ten (Tortious Interference with a Business Expectancy).

### 9.    Breach of Fiduciary Duty (Claim Eleven)

Under Colorado law, to recover for breach of fiduciary duty, the plaintiff must demonstrate (1) "that the defendant was acting as a fiduciary for the plaintiff"; (2) "that he breached a fiduciary duty to the plaintiff"; (3) "that the plaintiff incurred damages"; and (4) "that the defendant's breach of a fiduciary duty was a cause of the plaintiff's damages." *In re Estate of Chavez*, 520 P.3d 194, 203 (Colo. App. 2022) (citation omitted).

A fiduciary relationship exists between two people where one of them is "under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation[ship]." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 151 (Colo. 2007) (citation omitted) (alteration in original). "A fiduciary relationship may exist as a matter of law or may arise where one party occupies a superior position relative to another," but "an unequal relationship does not automatically create a fiduciary duty." *Id*. Such a relationship "can arise out of a relationship of blood, business, friendship, or association"

but the breach of that duty typically involves "a party who used his superior position . . . to the detriment of a vulnerable, dependent party." *Moses v. Diocese of Colo.*, 863 P.2d 310, 322 (Colo. 1993).

Fiduciary liability requires more than the principal placing trust or confidence in his agent—it requires the assumption of a duty and breach of that duty. *Id.* (citing *Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817 (10th Cir. 1986)); *Hill*, 790 F.2d at 824 (holding that the jury considering a breach of fiduciary duty claim "should have been instructed to decide first what [the agent] had agreed to do for [the principal] and then to determine whether [the agent] executed those tasks properly"). Where parties "are engaged in an arm's-length business transaction without any special relationship of trust and confidence and without one party assuming a duty to act in the other party's best interest, a fiduciary duty does not exist." *Mintz v. Accident & Inj. Med. Specialists, PC*, 284 P.3d 62, 68-69 (Colo. App. 2010) (citing *Biller Assocs. v. Peterken*, 849 A.2d 847, 852 (Conn. 2004)). Neither reliance nor past practice are sufficient to create a fiduciary duty. *Id.* at 69.

Here, the Court does not find that Plaintiffs have plausibly alleged the existence of a fiduciary duty or a breach thereof. The Court accepts as true Plaintiffs' allegation that they "grew to trust [Defendant] in a deep way," that Defendant and Kennedy were entrusted to oversee and manage production and distribution of the Graphic Novel, and that Defendant was "using Graphic Novel funds to fund other projects of his own choosing." *Second Am. Compl.* [#32], ¶¶ 26, 49, 50. Even so, Plaintiffs do not allege that Defendant "was in a superior and influential position" over them. *Mintz*, 284 P.3d at 69. If anything, Plaintiff Goode appears to have been in a superior position throughout this relationship. *See, e.g.*, *Second Am. Compl.* [#32], ¶ 24 (the parties' relationship began

with Defendant volunteering for Plaintiff Goode), ¶ 25 (Plaintiff Goode introduced Defendant to various people at Gaia), ¶ 28 (Plaintiff Goode secured Defendant a role as a writer), ¶ 29 (Gaia ended its contract with Defendant because Plaintiff Goode departed the show).

This is not the kind of relationship that is traditionally fiduciary in nature—it is more akin to an arm's-length transaction between business partners, employer/employee, or franchisor/franchisee. *Cf. Mintz*, 284 P.3d at 68 (collecting cases and noting that fiduciary relationships include attorney-client, principal-agent, trustee-beneficiary, general partner-limited partner); *cf. Second Am. Compl.* [#32], ¶ 48 (stating that Defendant "agreed to perform certain duties or work for [Plaintiff] Goode and [Plaintiff] Goode either paid [Defendant] in cash and/or ownership interest in various entities"). Plaintiffs' trust and confidence in Defendant are not enough to create a fiduciary duty. *Moses*, 863 P.2d at 322 (citing *Hill*, 790 F.2d at 824).

Plaintiffs' allegations that Defendant undertook and breached a fiduciary duty are conclusory because they are not supported by any supporting factual averments—in fact, they do not even distinguish between Defendant's and Mr. Kennedy's specific conduct. *Id.*, ¶¶ 81-82 (allegations directed at "[Defendant] and [Mr.] Kennedy"). Plaintiffs' allegations that Defendant and Mr. Kennedy "failed to perform certain duties" or that they have "not delivered on [their] promises to not only deliver Graphic Novels to those who ordered them, but to deliver them with additional merchandise," *id.*, ¶ 82, are insufficient. Even taking the latter allegation as true, the allegation that Defendant and Mr. Kennedy failed to deliver orders to customers could "encompass a wide swath of conduct, much of it innocent" and, therefore, "[P]laintiffs 'have not nudged their claims across the line from

conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As for Plaintiffs' various allegations of misuse of funds, they are also completely unsupported. *Second Am. Compl.* [#32], ¶ 50 (alleging there were "funding issues created by [Defendant] using Graphic Novel funds to fund other projects of his own choosing"), ¶ 73 (Upon "information and belief, [Mr.] Kennedy and [Defendant] used that power over the finances in order to embezzle funds for their own use"), ¶ 75 (alleging that Defendant and Mr. Kennedy "were turning the Graphic Novel into a complete logistical catastrophe"), ¶¶ 78-79 (alleging harm caused by "[Defendant's] and [Mr.] Kennedy's mismanagement" of Graphic Novel funds and the project as a whole). The Court cannot tell what mismanagement is attributed to Defendant (as opposed to Mr. Kennedy), what funds Defendant allegedly embezzled (as opposed to Mr. Kennedy), or what logistical catastrophe Defendant allegedly created (as opposed to Mr. Kennedy). Accordingly, Plaintiffs' Claim Eleven (Breach of Fiduciary Duty) is not well-pleaded.

Finally, to the extent that Defendant's alleged breach of fiduciary duty arose from the failure to perform a contract, the District Judge has already found that Plaintiffs failed to plausibly allege the existence of specific contracts or the breach of specific contract terms. *Order on Motion to Dismiss* [#117] at 6 (finding that "[P]laintiffs' complaint does not include supporting factual averments identifying any specific contract or what specific contractual terms each defendant allegedly violated or failed to perform."). Therefore, Plaintiffs' breach of fiduciary duty claim fails for this reason, as well. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Eleven (Breach of Fiduciary Duty).

**10.     Embezzlement (Claim Twelve)**

Plaintiffs allege that Defendant and Mr. Kennedy embezzled funds from his companies, in violation of Colo. Rev. Stat. § 18-4-405 (the "stolen property" statute). *Second Am. Compl.* [#32], ¶¶ 195-98. That statute authorizes a private cause of action against the taker of "property obtained by theft, robbery, or burglary," and because there are no allegations that Defendant robbed or burglarized Plaintiffs, the embezzlement claim falls within the civil theft portion of the statute. Colo. Rev. Stat. § 18-4-405; *In re Marriage of Allen*, 691 P.2d 749, 751 (Colo. App. 1984) (holding that theft includes embezzlement for purposes of the stolen property statute). A claim of civil theft requires Plaintiffs to show that Defendant "(1) knowingly obtained, retained, or exercised control over anything of value of another without authorization; and (2) intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse*, 549 P.3d 1043, 1051 (Colo. App. 2024) (citing Colo. Rev. Stat. § 18-4-401(1); *In re Estate of Chavez*, 520 P.3d at 204).

"[M]oney belongs to another if anyone other than the defendant has a possessory or proprietary interest in it." *Id.* (citing Colo. Rev. Stat. § 18-4-401(1.5)). "If the property that is the subject of the civil theft claim is money, in order for the plaintiff to have a proprietary interest in the money, there must be either a specifically identifiable account or a wrongful obtaining, retention, or exercise of control over specifically identifiable funds that belong to the plaintiff." *Id.* at 1051-52. Thus, a plaintiff fails to state a civil theft claim where "the party claiming civil theft did not allege the deprivation of specific funds." *Id.* at 1052 (discussing the Colorado Supreme Court's holding in *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603 (Colo. 2016)). Moreover, where the defendant "no longer

has possession of the money," the plaintiff cannot recover under Colo. Rev. Stat. § 18-4-405 because that statute only permits recovery where the other person still has possession of the stolen property. *Cedar Lane Invs. v. Am. Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996).

Thus, Plaintiffs have failed to plausibly plead a civil theft claim under the "stolen property" statute. The allegedly stolen property is money, i.e., "company funds for various companies belonging to [Plaintiff] Goode." *Second Am. Compl.* [#32], ¶ 196. To state a claim for stolen money under the statute, Plaintiffs had to allege the deprivation of *specific funds* and that Defendant still possesses those stolen funds. *Million*, 549 P.3d at 1051-52; *Cedar Lane Invs.*, 919 P.2d at 882. They alleged neither necessary element. Accordingly, the Court **recommends** that the Motion [#130] be **denied without prejudice** as to Claim Twelve (Embezzlement).

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiffs' **Motion for Default Judgment** [#130] be **DENIED WITHOUT PREJUDICE**. *See, e.g.*, *Day v. Career Bldg. Acad.*, No. 18-cv-00837-RM-KMT, 2021 WL 1723777, at *2 (D. Colo. Mar. 18, 2021) (denying motion for default judgment without prejudice where the plaintiff had failed to state a cognizable claim).

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and

recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 16, 2024                    BY THE COURT:


                                          Kathryn A. Starnella
                                          United States Magistrate Judge