1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
        CIVIL ACTION NO. 20-cv-00947-DDD-KAS
 3      _____

 4      JAMES COREY GOODE, ET AL.,

 5              Plaintiffs,

 6      v.

 7      ROGER RICHARDS RAMSAUR, ET AL.,

 8              Defendants.

 9      _____

10              Proceedings before KATHRYN A. STARNELLA, United

11      States Magistrate Judge, for the District of Colorado,

12      commencing at 3:38 p.m. on April 12, 2024, in the United

13      States Courthouse, Denver, Colorado.

14      _____

15      WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

16      HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17      _____

18                            APPEARANCES

19              VALERIE YANAROS, Attorney at Law, appearing on

20      behalf of the Plaintiffs.

21              LENDEN WEBB, Attorney at Law, appearing on behalf

22      of the Defendants.

23      _____

24                          MOTION HEARING

25
```

2

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE DEPUTY:  All rise.  Court is in session.
 6              THE COURT:  Thank you.  I'm getting some feedback.
 7    If you can mute yourself unless you're addressing the Court,
 8    please.  Thank you.
 9              The Court calls Case No. 20-cv-00947, James Corey
10    Goode, et al. v. Roger Richards Ramsaur, et al.  May I have
11    entries of appearance, please, starting with counsel for
12    plaintiff.
13              MS. YANAROS:  Yes, Your Honor.  It's Valerie
14    Yanaros for the plaintiffs.
15              THE COURT:  Thank you.  And counsel for
16    defendants.
17              MR. WEBB:  Your Honor, Lenden Webb on behalf of
18    defendants.
19              THE COURT:  Thank you.  I set this hearing, a
20    motion hearing on the withdraw at Docket Numbers 133 and
21    134.  I set this hearing because I understand it is urgent
22    in light of the mediation that is set to occur on Monday.
23              I do recognize that these motions to withdraw have
24    been pending for some time.  I don't think they became fully
25    briefed -- well, it looks like by the beginning of this
```

3

1  year, January 4, 2024, the motion at Docket No. 134 was

2  fully brief.  The other motion was fully briefed at the end

3  of December.

4          I apologize for not getting to that sooner.  These

5  motions were on a lower priority, but now with the mediation

6  on Monday, they are obviously a high priority.

7          In reviewing the motions, I understand that

8  counsel is seeking to withdraw representation of Plaintiff

9  (sic) Adrienne Youngblood and Plaintiff (sic) Leon Kennedy.

10  Both the plaintiffs are on VTC.  So actually let's have them

11  just state their appearances on the record.

12          Ms. Youngblood, would you please announce

13  yourself.

14          MS. YOUNGBLOOD:  Yes.  Adrienne Youngblood.

15          THE COURT:  Thank you.  Mr. Kennedy.  Mr. Kennedy,

16  would you please announce yourself?  And you may have to

17  unmute yourself.

18          THE DEPUTY:  Your Honor, I'm having to mute him,

19  but I'm -- we should -- we should be able to hear him.

20          THE COURT:  Mr. Kennedy, can you hear me?  Mr.

21  Kennedy, if you can hear me, could you give a thumbs up,

22  please?  All right.  He can hear me.  Apparently we cannot

23  hear him, however.

24          Ms. Galera, is there a phone number we can give

25  him to call in?

4

1           THE DEPUTY:  Yes, Your Honor.  If I can have just

2   one moment.

3           THE COURT:  Yes.  Thank you.

4           THE DEPUTY:  Okay.  The number, Mr. Kennedy, for

5   you to call is (571) 353-2301, and the access code is

6   334545142#.

7           AUTOMATED VOICE SYSTEM:  Welcome to a Cisco

8   Meeting.  Please enter the call ID followed by the pound

9   key.  You are entering the meeting now.  Mr. Kennedy, can

10  you -- it seems like you might be -- Ms. Galera, is he not

11  connected?

12          THE DEPUTY:  He has not connected to --

13          THE COURT:  Oh, okay.  Sorry.

14          THE DEPUTY:  -- the phone line yet, Your Honor.

15          MR. KENNEDY:  Your Honor, can you hear me?

16          THE COURT:  Yes.  Is this Mr. Kennedy?

17          MR. KENNEDY:  Yes.

18          THE COURT:  All right.

19          MR. KENNEDY:  Yes, Your Honor.

20          THE COURT:  Thank you.  So Mr. Kennedy has joined

21  us on the record and just -- now, it looks like somebody

22  fell off VTC.  It looks like Mr. Wood (sic), the attorney,

23  fell off.  And -- yeah.

24          THE DEPUTY:  Mr. Webb, are you still there?

25          THE COURT:  Can we try to get Mr. Webb on the

5

1    phone, please?

2         THE DEPUTY:  Hi.  May I speak to Lenden Webb,

3    please?  We just lost him in a hearing.  Yes, please.  Hi.

4    I show that you're connected to the VTC, but we can't see or

5    hear you.  So I'm just going to have you call into the phone

6    line as well.  Sure.  It's (571) 353-2301.  The access code

7    is 334545142#.  Thank you.  Bye-bye.

8         MR. WEBB:  Okay.  I'm here now.  Attorney Lenden

9    Webb.

10        THE COURT:  Thank you, Mr. Webb.  We can hear you,

11   and thanks for dealing with -- our your patience as we deal

12   with these technical issues.

13        So to -- to correct the record, Ms. Youngblood and

14   Mr. -- Mr. Kennedy are defendants and counterclaim

15   plaintiffs.  So we are here to address the -- Mr. Webb's

16   motions to withdraw representation of both Ms. Youngblood

17   and Mr. Kennedy.

18        I understand from reviewing the motions that the

19   basis for the withdrawal, I recognize while significant

20   details cannot be divulged because of attorney-client

21   privilege, however, information has been shared through

22   these motions, and based on that information, I understand

23   that there are communication issues between the clients and

24   their attorney, Mr. Webb, and then also what Mr. Webb is

25   asserting as material breaches of the agreement, and I -- I

6

1    understand that to be failures to pay for his services.

2         So let me hear from Mr. Webb in terms of your

3    position on needing to withdraw at this time, mindful that

4    we've got a mediation -- or you all have a mediation on

5    Monday.  And then this case that is -- has been pending

6    since 2020, it is set for trial, I believe in June.  So Mr.

7    Webb, the floor is yours.

8         MR. WEBB:  Sure, Your Honor.  It comes down to

9    this in the simplest way, you just said, failure to pay my

10   fee outlined in the engagement agreement and communication

11   difficulties with the clients.

12        THE COURT:  Okay.  Let me hear from Ms. Youngblood

13   in terms of the communication issues.  Well, actually first

14   let me hear about the prejudice that you might incur, what,

15   if any, prejudice you will incur if Mr. Webb is granted

16   leave to withdraw at this stage in the case.  And Ms.

17   Youngblood, you might need to unmute yourself.

18        MS. YOUNGBLOOD:  I -- I don't -- I'm not sure the

19   term prejudice.  I have no -- I -- I -- I was -- as far as

20   how this case has proceeded, I don't feel there was ever any

21   kind of breakdown in communication with our -- with Mr.

22   Webb.

23        But I do understand the -- the financial concerns

24   and what ended up happening, this case was very long, and

25   you know, by the time something actually, you know, finally

7

1   happened after about 1,000 days and the motion to dismiss

2   the breach of contract claim was -- happened and things

3   started moving, it was four years later, and honestly, funds

4   just became pretty dried up.

5          And my response to his, you know -- my response to

6   him needing payment immediately, and then if not, to sub

7   out, that all really culminated, just the intensity of it

8   and the -- the need for it happen now happened towards the

9   end of last year, and it was during that time and almost --

10  almost right down to the minute when I was recovering from

11  an accident, and it wasn't that the -- the recovery from

12  this freak accident -- that the accident caused the payment

13  delays.

14         It was the accident that I was in caused traumatic

15  brain injury, and I really at the time just did not have the

16  wherewithal to deal with what was being asked of me.  You --

17  you have to sub out, you're going to maybe have to go pro se

18  because I don't have the financial means to keep going.

19  We've paid $130,000 already.

20         And so I was just kind in a quandary and just

21  like, "Okay.  I can deal with this later, but right now, I

22  really can't deal with it," and there was more of a sense of

23  an urgency on Mr. Webb's part, and so that's just how that

24  transpired.

25         He filed his motion to withdraw, and I did file a

1    response to kind of explain that, you know, my position.

2    And I'm willing to go either way, but I kind of also thought

3    that would happen around January or February, that decision

4    would come down so that then I would have more time to

5    prepare either pro se or find a pro bono person to help me

6    through the rest as far as, you know, the mediation and the

7    possible trial.

8         And then, as I said, at the end of -- at -- at the

9    end of that year and everything, I was just a bit

10   overwhelmed with taking on a lot of bad things.  I was

11   really working on repairing my cognitive ability, which I am

12   happy to say is -- I've -- I've made great improvement.

13        So I have no prejudice.  I just feel like I've

14   been moving along with the options that have been given me

15   in this very long and difficult journey, a lot -- just a lot

16   of things.  This has been a long time.

17        You know, we went through COVID and just all of

18   the things that created this delay.  So really it just left

19   me up -- with my hands up in the air kind of asking the

20   Court, "What do I do?  Do I" -- just whatever you --

21   whatever you decide, that's what I'll do, but now we're --

22   you know, and that was the same with mediation.

23        We weren't stop -- all right.  Well, we're --

24   we're following the Court's orders by scheduling the

25   mediation, paying for the mediation, preparing for the

9

1    mediation with or without representation.  And you know, we

2    -- we want to go through with it because we really do want

3    to resolve this case, but I guess I -- when I say "we," I'm

4    speaking for Mr. Kennedy, but I really want to resolve this

5    case in a settlement agreement that's fair for everyone.

6            So I -- that's really what I was hoping for.  So

7    we went ahead and we scheduled all that in good faith, and

8    it's very important.  So I -- I do feel that it's Friday,

9    and this is Monday, and if it's possible for us to, you

10    know, just have representation for that -- for that day just

11    to see us through mediation.

12            I mean, that's kind of what my hope would be, but

13    again, whatever happens is -- I'll deal with whatever

14    happens.  That's how this case has gone.

15            THE COURT:  Okay.  Thank you.  And if you would

16    please mute -- mute yourself because I'm getting feedback.

17    Thank you.

18            So I -- yes.  I can understand your frustrations.

19    The course of litigation tends to be slow, and as you noted,

20    right, then the pandemic as well and also given the high

21    volume of cases in this court.  I have over 400 cases before

22    me, and I believe the district judge, Judge Domenico, he has

23    perhaps a similar number.  So that also contributes to a

24    delay in -- in rulings.

25            Nevertheless, we are here.  And also, I am very

10

1    sorry to hear about the -- the cognitive impairment that

2    you've suffered, but also I mean, congratulations and kudos

3    to you in terms of all the hard work you put into recovery

4    and that you're now at this stage that you are in terms of

5    your recovery.

6            So in terms of prejudice, when I asked about

7    prejudice, what I'm asking about is how will you, if at all,

8    be hindered in your presentation of your position of your

9    defense of the claims against you and of your asserting the

10   counterclaims, supporting the claims you've counter --

11   you've asserted in this mediation on Monday.

12           Do you feel like Mr. Webb has sufficiently advised

13   you in terms of what what's expected of you and how you are

14   to navigate Monday's mediation?

15           MS. YOUNGBLOOD:  Well, just by example, you asked

16   me, you know, my prejudice, and I didn't know if that was a

17   legal term -- in reference to a legal term or in reference

18   to do I have any prejudice against Mr. Webb.

19           And so that's a really great example of the ways

20   that I could get caught up and in -- in this procedure where

21   I -- you know, my lack of legal knowledge is -- it's a

22   handicap for sure.  And you know, I've -- I've -- I've been

23   studying quite a bit, but that doesn't -- I'm not a lawyer.

24           So I -- I do feel that it would 100 percent be

25   detrimental to my -- being represented in any way.  I can of

1  course attempt myself, but I -- I can't -- yeah.  I -- I --

2  I think that it would -- for me to go in and be presumptuous

3  and to think that we're going to start -- this is a

4  complicated case.

5        My part in it doesn't feel very complicated, but

6  somehow it's complicated, and just my lack of knowledge of

7  the law, Mr. Webb has given me some things to work forward

8  with several months ago, but it was a little bit like

9  Chinese to me.  You know, I just -- I really didn't

10  understand all of it.

11        So again, I'm not a lawyer, and I've also never

12  been in a situation like this, and so I -- I see it to be a

13  huge hindrance in -- in fairly being represented.

14        THE COURT:  And how do you anticipate if I grant

15  this motion -- and would you please mute yourself again?

16  I'm sorry.  Thank you.  That feedback is really annoying.

17        If I do grant this motion to redraw, how do you

18  anticipate you will prepare to represent yourself at trial

19  in June?

20        MS. YOUNGBLOOD:  I haven't gotten to that reality.

21  I think I would -- I -- I really would have to -- I really

22  would have to -- it would either be pro se or mind find a

23  pro bono.  I do not have the finances in -- in a large sum

24  like that to retain another attorney.

25        Not only that, when I did even attempt to do that,

12

1    it was so complicated that -- you've, we've gone so far with

2    this, and it's -- there's so many things that have

3    transpired that bringing in somebody else, it -- it doesn't

4    even feel realistic.  But I guess I would just have to

5    really search out that person.

6            THE COURT:  All right.

7            MS. YOUNGBLOOD:  Or find someone pro bono or, you

8    know, just go pro se because that is my only option.  You

9    know, I'm -- I'm -- I'm -- I'm defending myself against what

10   -- I'm defending myself.  I didn't start this.  I did not

11   initiate it.

12           So I'm left to defend myself with whatever means I

13   have, and unfortunately, there -- I don't have the means.

14   We had them, and that could have gone for two years, but now

15   four years later, it's -- it's just not -- it's just not

16   available.

17           THE COURT:  Thank you.  Let me hear from Mr.

18   Kennedy in connection with Docket No. 134, that motion to

19   withdraw.  Similar questions for you as I asked Ms.

20   Youngblood.

21           How, if at all, will you be prejudiced if I grant

22   this motion to withdraw, prejudiced with respect to your --

23   your presentation of your side of the case during Monday's

24   mediation?

25           MR. KENNEDY:  All right.  You can hear me, Your

1   Honor?

2          THE COURT:  Yes, I can.  Thank you.

3          MR. KENNEDY:  Oh, okay.  And if I could also

4   answer a couple things that Mr. Webb said.  First of all,

5   there -- there was no breakdown in communication that he

6   used as an excuse.  Every time they sent me -- any

7   information that was sent to us, we replied immediately

8   within -- within a couple days at the very most.  And

9   furthermore, we kept sending him information that -- that he

10  refused to litigate on, or in many instances, not even

11  answer.  That's number one.

12         Number two, I don't owe him any money.  I have --

13  we have paid over $130,000.  To this day, I have a reserve

14  with -- with this firm, and I have paperwork showing from

15  his accountant that I have money in reserve.  He has used

16  that excuse to really abandon this case and -- and not do

17  any of the things that -- that we needed to have this case

18  resolved.

19         So that is my answer as far as owing him money,

20  that's my answer to a breakdown in communication.

21         THE COURT:  Thank you.  Would you please talk

22  about what, if any, prejudice you will incur if you have to

23  proceed with Monday's mediation by representing yourself?

24         MR. KENNEDY:  Sure.  I would -- I would hope that

25  he is obligated to be with us for the mediation.  It's a

14

1    complicated situation.  We have had no help from him as far

2    as strategy, direction, even -- even the proper materials to

3    present.

4           He had written to us about a month ago basically

5    blaming the Court saying when the Court doesn't rule on a

6    motion for over two years and opposing counsel would not

7    negotiate, the only move for -- forward for us was to get

8    out.  That was his attitude, and he just wanted to leave us

9    holding the bag on -- on the holes that have been left in

10   this case.

11          He -- he also in that same piece of correspondence

12   stated that he had -- from the deposition that I paid for

13   and flew two lawyers in from Los Angeles to Colorado, we

14   were supposed to have two days' worth of depositions, he

15   only did one.

16          But in that deposition, he also stated -- as is

17   part of his excuse, he also stated as recently as a month

18   ago, and from that deposition, I gleaned great information

19   where he had perjured himself and it would be a win-win at

20   any trial.

21          In trying to go into this mediation, Your Honor, I

22   asked him, "Well, can you send us that information?  Since

23   it's a win-win at any trial, and we would stand good at any

24   trial with this information."

25          He refused to send it to me.  I wrote to him three

1  times asking him for this information.  He refused to send

2  to me basically stating, "I only have time for my paying

3  customers."  And yet, like I said, I don't owe him any money

4  and have given him over $130,000.

5       So I'm very -- I just think it's just so

6  unprofessional, and -- and now for him to try and get out of

7  this at -- at this critical time, I -- I just think it's

8  abhorrent and very unprofessional.

9       THE COURT:  All right.  Thank you, Mr. Kennedy.

10      Mr. Webb, do you wish to respond to Mr. Kennedy's

11 and Ms. Youngblood's comments?

12      MR. WEBB:  Sure.  Your Honor, right now and

13 actually back in last year, Mr. Kennedy believes that the

14 bill between himself and Ms. Youngblood is somehow

15 apportioned between the two of them, and I have tried to

16 defer that as much as I could, but Ms. Youngblood has not

17 been able to pay her portion, and so I cannot carry the two

18 of them with Mr. Kennedy's portion alone.

19      Currently on the file, because the two of them

20 have joint representation, there's over $78,000 owed.  I

21 cannot continue on a case where I'm owed $78,000.  I cannot

22 continue to answer 10- to 15-page missives from Mr. Kennedy

23 asking me for every nuanced legal analysis under the sun of

24 his case when the file has over $78,000 that is not paid.

25      I have nothing against Mr. Kennedy and Ms.

16

1    Youngblood.  I think -- it's a travesty of what's happened.

2    I think the depositions, even though I advised my client not

3    to put their birth date up and the Court sanctioned us for

4    not sharing a birth date, I still stand by that decision

5    even though it was sanctioned because Mr. Yanaros' client is

6    sharing private information on the Internet.  But we paid

7    those sanctions last year.

8          So right now, I paid sanctions.  I stand -- I

9    stand by the mistakes I've made to not share private

10   information.  I don't believe birthdays should be on the

11   Internet.  I think that document is improper.

12         It is the high time for my firm to be out of this

13   case, $78,000 deep.  Ms. Youngblood's a wonderful person,

14   but unfortunately she doesn't have the funds and the means

15   to pay our office.

16         Mr. Kennedy's also a wonderful person.  I'd love

17   to be able to help, but I can't.  I can't do it and be a

18   financial steward of my firm and our resources.  So right

19   now, if I'm not paid to do work, that is the breakdown of an

20   attorney client relationship because they're asking me to do

21   work for free.

22         I cannot go to mediation on Monday.  I'm -- I'll

23   be there at this point if -- if you keep me in this case,

24   but I'm -- essentially because I filed a motion over four

25   months ago and they have signed engagement letter that says

17

1    they would -- they agreed to sub me out peaceably if I asked

2    them to.  They have not honored that portion of the

3    engagement agreement that both of them signed.

4              I -- I need to be rid of this case.  I have a

5    family to feed.  I'm not in the business of doing things for

6    free.  I cannot do this for free.  I acknowledged the fact

7    that we received a lot of money, but there have been many,

8    many years of litigation, and so those funds have come and

9    gone.

10             So Your Honor, I -- we need to withdraw.  Please

11   relieve us as counsel so we can move forward.

12             THE COURT:  All right.  Thank you for your

13   comments.  I mean, certainly no attorney should be forced to

14   have their -- their law firm go under water and be forced to

15   continue representation when they're not getting paid.

16             I will note that to the extent that Ms. Youngblood

17   and Mr. Kennedy have disputes about the quality of

18   representation and the amount that has been paid or the

19   amount that is still being owed, this is not the appropriate

20   forum for that.  The appropriate forum for that is the

21   Office of Attorney Regulation, which is housed in the

22   Colorado Supreme Court.  So you -- if -- that would be the

23   forum.

24             What I need to consider here today again is --

25   well, before I get into that, I will just note on the record

18

1   in terms of I'm sure Mr. Webb is very familiar with his

2   professional obligations under the Colorado Rules of

3   Professional Conduct.

4          Under Rule 1.4, which governs communication, it

5   states that, "A lawyer shall reasonably consult with the

6   clients about the means by which the clients objectives are

7   to be accomplished, keep the client reasonably informed

8   about the status of the matter, promptly comply with

9   reasonable requests for information."

10         And then it also goes on to say that, "A lawyer

11   shall explain a matter to the extent reasonably necessary to

12   permit the client to make informed decisions regarding the

13   representation."

14         In the comments to Rule 1.4 in terms of explaining

15   matters, it notes that, "The client should have sufficient

16   information to participate intelligently in decisions

17   concerning the objectives of the representation and the

18   means by which they are to be pursued to the extent the

19   client is willing and able to do so.

20         Adequacy of communication depends in part on the

21   kind of advice or assistance that is involved.  The guiding

22   principle is that the lawyer should fulfill reasonable

23   client expectations for information consistent with the duty

24   to act in the client's best interest and the client's

25   overall requirements as to the character of representation."

1        The notes -- or the comments also say, ordinarily,

2   "the information to be provided is that appropriate for a

3   client who is comprehending" -- "who is a comprehending and

4   responsible adult."

5        Then Rule 1.16 governs declining or terminating

6   representation.  It has various subparts.  Subpart B

7   explains that, "Except as stated elsewhere," essentially

8   elsewhere in this rule, specifically Paragraph C, "A lawyer

9   may withdraw from representing a client," if Subpart 1,

10  "Withdrawal can be accomplished without material adverse

11  affect on the interest of the client."

12       Rule 1.16, Subpart B(4) says, "A lawyer may

13  withdraw from representing a client if the client insists

14  upon taking action that the lawyer considers repugnant or

15  with which the lawyer has a fundamental disagreement."

16       So it sounds like there are some fundamental

17  disagreements here, but the real clincher is, is there going

18  to be a material adverse affect on the interests of Ms.

19  Youngblood and Mr. Kennedy?

20       I do note, I point -- I took a look, I came across

21  a case from the District of Utah, Ray Tatum v. David Moore,

22  2013 Westlaw 4594278, District of Utah from August 28, 2013.

23  There the Court denied a -- an attorney's motion to

24  withdraw.  The motion to withdraw was premised on ongoing

25  ineffective communication with the client.

20

1          The Court denied the motion because it noted that

2    the parties, pursuant to the district judge's order -- now

3    this decision I'm looking at was a U.S. magistrate judge's

4    order, but he was noting that deadlines that the district

5    judge imposed, the district judge basically had set a

6    deadline.  The parties had 15 days remaining to conduct a

7    mediation.

8          Also coincidentally like this case, that case had

9    been pending for nearly three years, and so the Court had

10   noted that it would be disruptive to allow withdrawal at

11   that point, and it -- the -- the pro se -- the judge was

12   concerned that the pro se -- if the litigants became pro se,

13   they would not be able to deal with the legal issues that

14   would be presented -- that they would be confronted with.

15         And so he cites to -- this judge cited to a case

16   from the 6th Circuit, Brandon v. Blech, 560 F.3d 536, 6th

17   Circuit, 2009, where it upheld withdrawal would cause

18   "severe prejudice" to the client.

19         I also note that Local Rule Attorney -- so

20   District of Colorado Local Attorney Rule 5, which governs

21   entries and withdrawals of appearance, Subpart B talks about

22   what's required when an attorney seeks to withdraw.

23         And one of the requirements is that the attorney

24   must give notice to the client and it basically shall be a

25   warning that the client is personally responsible for

1    complying with all court orders and time limitations

2    established by applicable statutes and rules.

3            The -- the rule -- the local rule essentially

4    requires a motion to indicate that the attorney has provided

5    their clients that notice.  Neither motion at Dockets Number

6    133 or 134 contain any sort of certification or statement

7    concerning whether that notice was provided.

8            I am concerned.  I've gotten the sense, from based

9    on what particularly Ms. Youngblood shared, that at least

10   she is going to be going into Monday's mediation and she's

11   uncertain as to what is going to be expected of her and how

12   she's supposed to present her case to the mediator and

13   possibly respond to any offers that the mediator is

14   delivering from the other side.  So I do find that there

15   would be substantial prejudice with respect to Ms.

16   Youngblood.

17           It also sounds like, based on what I see in Docket

18   Number 134, the motion to withdraw representation on -- of

19   Mr. Kennedy, it -- it does -- I mean, based on the motion,

20   there's no indication that he's received any notice in terms

21   of what's expected of him regarding the mediation.  And also

22   neither of these motions indicate that the clients have been

23   apprised of what's expected of them if they are going to

24   have to represent themselves at trial.

25           So given the substantial prejudice to Ms.

1     Youngblood and Mr. Kennedy, I am denying the motion to

2     withdraw with respect to Monday's mediation.  Mr. Webb, I

3     understand that you are not getting --

4               MR. WEBB:  Your --

5               THE COURT:  -- paid, that you are --

6               MR. WEBB:  Your --

7               THE COURT:  -- incurring additional costs through

8     this representation, but you --

9               MR. WEBB:  May I be heard, Your Honor?

10              THE COURT:  Well, let me just finish.  Based on

11    what the Rules of Professional Conduct require in terms of

12    representation and term -- terminating representation, what

13    the local rules require and what the case law requires, I --

14    there is -- because of the substantial prejudice, I cannot

15    grant the motion with respect to Monday's mediation.  You

16    may be heard, Mr. Webb.

17              MR. WEBB:  Your Honor, when I filed these motions,

18    there was no mediation to advise them about.  That's why

19    it's not in there.

20              THE COURT:  I understand, however --

21              MR. WEBB:  So --

22              THE COURT:  -- just now, today, I heard from Ms.

23    Youngblood especially and Mr. Kennedy alluded to the fact

24    they don't know what is expected of them on Monday, and that

25    is a problem.

23

 1          MR. WEBB:  Okay.  Well, that's completely -- I

 2   have every email I've gotten from the mediation company

 3   saying literally send payment or send documents or send a

 4   mediation brief.  I forwarded that within 24 hours to them.

 5          They have been in communication with the mediation

 6   company.  They have paid them directly.  They've had

 7   communication with the mediation company directly.  I'm out

 8   of that loop.  They've had instructions, access to all the

 9   rules.

10          As Ms. Youngblood indicated, they've talked to

11   attorneys, okay?  They've had six, almost -- probably six or

12   seven months since I first told them, "Hey, you guys need to

13   sub and get me out of the case."  There is no prejudice

14   other than the prejudice that they created for themselves by

15   not getting another attorney.  They are holding me hostage

16   for over six months, Your Honor, and that can't be so.

17          So I agree with you, if -- if -- if I file this

18   motion on the eve or trial or on the eve of mediation, then

19   I should include everything in there that they need to know,

20   but the mediation wasn't even scheduled back in December

21   when I filed these documents.

22          That wasn't at issue, okay?  So there's no

23   substantial prejudice.  I have communicated this to them in

24   email every single time.  They're in direct communication

25   with the mediation company for months now, okay?  So I have

1    been doing it.  And there is a material breakdown when they

2    don't pay the bills.  I can't be held in some sort of a --

3    that's -- and that's the problem.

4              I understand you have 400 cases, Your Honor, and I

5    get it, and the judges here in San Diego County, they have

6    1200 to 1450 cases, and they struggle too.  However, I -- I

7    can't be in a situation where I'm expected to put something

8    in a motion that hasn't even happened yet.

9              THE COURT:  The --

10             MR. WEBB:  So you're asking me -- sure, Your

11   Honor.  Go ahead.

12             THE COURT:  The issue is, there's no indication in

13   your motions at the time you filed them that you provided

14   your clients notice in terms of what the expected of them

15   going forward.

16             Now, I'm looking at the motions today and I asked

17   -- I gave Ms. Youngblood and Mr. Kennedy the opportunity to

18   talk about what, if any, prejudice they would incur, and it

19   -- it's very apparent to me that Ms. Youngblood would by

20   prejudiced, and it's -- it is questionable in my mind as to

21   whether Mr. Kennedy can adequately represent himself on

22   Monday.

23             So the mere fact that you are forwarding

24   information from the mediator, it doesn't mean you're

25   actually explaining things to your clients as required under

1  the Colorado Rules of Professional Conduct Rule 1.4.

2          So you need to explain things to the extent

3  reasonably necessarily to permit the client to make informed

4  decisions regarding representation.  So just to send things

5  and expect them to figure it out is falling short of your

6  obligations.

7          MR. WEBB:  Okay.

8          THE COURT:  Monday's mediation --

9          MR. WEBB:  Okay.  So you --

10          THE COURT:  -- is go to last, what, a maximum of

11  what, eight hours?  How long is the mediation set for?

12          MR. WEBB:  I think it's four hours, Your Honor.

13          THE COURT:  Four hours?

14          MR. WEBB:  Correct, Your Honor.

15          THE COURT:  Okay.

16          MR. WEBB:  Let me ask you this, can -- can I be

17  relieved as soon as the mediation is completed?

18          THE COURT:  Well, I'm going to ask you to re-file

19  your motion that fully complies with local -- with the Local

20  Attorney Rule 5 and that you're going to indicate in there

21  that you have given your clients notice that they are

22  responsible for complying with all court orders and time

23  limitations established by the applicable statutes and

24  rules.

25          And you're going to confer with your clients about

1    what is expected of them in preparing for trial in June, and

2    that until they get attorney representation, whether through

3    their own paying somebody or through pro bono counsel, they

4    are responsible for -- for abiding by the deadlines.

5         So again, my decision is based on the severe

6    prejudice to the clients on Monday.  The trial is farther

7    out.  I recognize if new attorneys come on board, I mean,

8    the -- well, actually June is just two months away.  If new

9    attorneys come on board, they're going to need time to get

10   up to speed with this case.  But I cannot -- under my

11   obligation, I cannot allow this withdrawal to occur in

12   advance of Monday.

13        MR. WEBB:  Okay.  Your Honor, I understand that.

14   If we file this motion again on Tuesday, would -- is there

15   an ex parte or a different manner that we can -- instead of

16   waiting for four months or longer, if this matter can be

17   heard to withdraw?

18        THE COURT:  Chances are the -- I mean, from what

19   I've heard, it sounds like -- it sounds like I won't need an

20   additional hearing on the matter.  This matter is now very

21   much on my radar.  So I will be file -- I will be ruling on

22   any new motion you file very quickly.

23        MR. WEBB:  Okay.  Thank you, Your Honor.

24        THE COURT:  You're welcome.  And Ms. --

25        MR. WEBB:  We'll file it right away.

 1          THE COURT:  Okay.  And Ms. Yanaros -- Yanaros has

 2    been sitting quietly.  I don't know if she has a stake in

 3    the matter.  Is there anything you wish to stay on the

 4    record?

 5          MS. YANAROS:  Not really, Your Honor.  We don't --

 6    we don't oppose any motion though for -- for opposing

 7    counsel to -- to withdraw.

 8          THE COURT:  Okay.  So Ms. Youngblood and Mr.

 9    Kennedy, if this case does not settle on Monday, then Mr.

10    Webb -- I mean, it really seems like things have come to an

11    impasse here, and right, I mean, nobody should be required

12    to take their firm under water in continuing to represent

13    clients.

14          So then Mr. Webb will be allowed to file the

15    motion to withdraw, and -- and also, Mr. Webb, before you

16    file that motion, confer -- indicate whether the motion is

17    opposed or not.  If it is opposed, then I will probably

18    allow a very short response time just so that this is all on

19    the record.

20          If and likely when I grant that motion to

21    withdraw, then Ms. Youngblood and Mr. Kennedy, you are

22    welcome to file a motion for appointment of counsel.  Even

23    if I grant that motion for appointment of counsel, so what

24    that means is that basically I'm -- I'm saying, "All right.

25    I'm going to refer your case to the pro bono panel."

1        So the Court has a panel of attorneys who have

2   expressed a willingness to take on cases pro bono.

3   Attorneys are more willing to take on cases that are -- are

4   headed towards trial.  So I think you might have a better

5   chance than others to get pro bono representation because

6   now you're -- if it doesn't settle on Monday, you're going

7   to be in a trial posture.

8        Even if I grant your motion to appoint counsel,

9   you are still responsible for deadlines and moving your case

10  forward and preparing for trial until or unless attorneys

11  enter on your behalf.

12       Given where we stand with things with the change

13  in counsel, it's possible Judge Domenico's going to push --

14  move the trial date.  Of course, anybody can file a motion

15  to push back the trial date, but that -- that's how I need

16  to thread the needle here.  Does anybody have any questions?

17       MR. WEBB:  I would just ask as long as we're all

18  here if Ms. Youngblood and Mr. Kennedy would have opposition

19  to delaying the trial date?  Because Ms. Yanaros has

20  indicated an interest in continuing the trial date.  That

21  would allow my clients more time to prepare.

22       Mr. Kennedy, would that be agreeable with you?

23       MR. KENNEDY:  I would like to reserve my answer on

24  that after I've given some thought and -- and see what

25  happens on Monday.

29

1          THE COURT:  Fair enough.  And you know what?  I
2    would prefer -- so depending on what happens on Monday, you
3    all should confer about what you want to do with the trial
4    date, and then the appropriate motion should be filed,
5    whether it's a joint motion, unopposed motion.  If
6    somebody's opposed then they'll have a chance to respond to
7    that motion to continue the trial date.  All right.
8          MS. YANAROS:  Thank you, Your Honor.
9          THE COURT:  All right.  Thank you.  So Ms.
10   Youngblood is nodding her head, and also she was shaking her
11   head when I asked if anybody has anything else to say.  Mr.
12   Kennedy, is there anything else you would like to say?
13         MR. KENNEDY:  No, Your Honor.  I understood what
14   your ruling was, and -- and we thank you for your time.
15         THE COURT:  Okay.  Mr. Webb?
16         MR. WEBB:  Your Honor, I understand I could have
17   put more information in moving papers.  I couldn't have put
18   information in there that didn't exist at the time, but I
19   respect what your concerns are, and we could have filed that
20   better.  I appreciate it.
21         THE COURT:  Okay.  So to be clear, Docket No. --
22   the motions at Dockets Number 133 and 134 are denied without
23   prejudice.  So certainly denied with respect to the Monday's
24   mediation and denied without prejudice with respect to
25   representation beyond Monday's mediation.

30

1          With that said, the Court will be in recess.

2     Thank you.

3          THE DEPUTY:  All rise.  Court is in recess.

4          (Whereupon, the proceedings concluded at 4:25

5     p.m.)

6

7                    TRANSCRIBER'S CERTIFICATE

8          I certify that the forgoing is a correct

9     transcript, to the best of my knowledge and belief (pursuant

10    to the quality of the recording) from the record of

11    proceeding in the above-entitled matter.

12

13    /s/Brittany Payne                September 12, 2024

14    Signature of Transcriber                 Date

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com